# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 1999-CA-01063-SCT

*HERBERT B. IVISON, JR.*

*v.*

*LEIGH S. IVISON*

| | |
|---|---|
| DATE OF JUDGMENT: | 06/14/1999 |
| TRIAL JUDGE: | HON. PAT WISE |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | WILLIAM R. WRIGHT |
| | W. BENTON GREGG |
| | STACEY P. STRACENER |
| ATTORNEY FOR APPELLEE: | R. CONNER McALLISTER |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | REVERSED AND RENDERED - 06/29/2000 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 7/20/2000 |

## BEFORE PITTMAN, P.J., SMITH AND DIAZ, JJ.

### DIAZ, JUSTICE, FOR THE COURT:

¶1. On August 2, 1993, Leigh S. Ivison and Herbert B. Ivison, Jr., executed a child custody and property settlement agreement which was attached as an exhibit to the final judgment of divorce granted on the grounds of irreconcilable differences.

¶2. On September 29, 1997, Leigh filed a motion for modification and clarification and motion for contempt against Herb. On December 9, 1997, Herb filed his response. The chancellor heard arguments on the motion on August 5, 1998. Prior to the hearing, all issues were resolved except three: (1) whether Herb should be responsible for Leigh's tax liability on mortgage payments which Herb made on her behalf, (2) whether Herb should be required to pay Leigh's attorney fees, and (3) a visitation issue. Only the issue relating to Leigh's tax liability is before this Court on appeal.

¶3. The chancellor rendered a bench opinion wherein she found that based upon the intent of the parties at the time the final judgment was entered, Herb should reimburse Leigh for her tax liability on the mortgage payments. The order on motion for modification and clarification was entered on September 28, 1998. On March 19, 1999, the chancellor denied Herb's motion for reconsideration. We find that the chancellor abused her discretion in modifying the divorce agreement. Accordingly, we reverse.

## FACTS

¶4. The final divorce agreement awarded Leigh exclusive use and possession of the former marital home. Herb agreed to pay the monthly mortgage payments of approximately $2,000 on the home. He agreed to make these payments until the youngest child born to the marriage reached the age of majority. At that time, the parties would sell the home and divide the equity. Additionally, Herb agreed to pay Leigh periodic alimony in the amount of $2,500 per month, lump sum alimony, and child support of $1,500 per month. By the terms of the agreement, Herb is also required to pay private school tuition for the parties' three children, as well as various other expenses for the children. The total annual cash support received by Leigh from Herb is approximately $92,000, not including tuition and other expenses for the children.

¶5. The house payments were not designated as alimony in the divorce agreement. Moreover, the divorce agreement did not address whether the periodic alimony payments and mortgage payments paid by Herb were deductible by Herb or includable by Leigh for federal and state income tax purposes. Notably, Herb did not claim any income tax deductions for any of the mortgage payments for the years 1993 and 1994. However, he did deduct the $2,500 per month periodic alimony payments on his income tax return. Beginning in 1995, Herb began deducting one-half of the mortgage payment on his income tax return.

¶6. Leigh did not include these payments as income to her when Herb included the house payments as a deduction. This omission triggered an audit of Leigh's income tax return. As a result of the audit, Leigh incurred a tax liability of approximately $2,890, excluding penalties for 1995. Both Leigh and Herb testified that each of them entered into the divorce agreement unaware of the tax consequences of the mortgage payments.

¶7. Leigh sought an IRS ruling on whether the payments were deductible for Herb, and therefore, included as income for her. The IRS determined that the payments were taxable alimony which should be included by Leigh on her income tax return. Thereafter, on September 29, 1997, Leigh filed a motion for modification and clarification of the final divorce judgment and a motion for contempt seeking reimbursement for payments resulting from the IRS audit, as well as an order from the court precluding Herb from deducting the mortgage taxes of the marital home on future income tax returns. Through her pleadings, Leigh asked the court to hold that the mortgage payments were, in fact, child support; however, she abandoned that theory at trial and instead sought an order requiring Herb to reimburse her for any taxes imposed as a result of Herb deducting the mortgage payments from his income taxes.

¶8. The chancellor issued a bench opinion wherein she found that Herb and the IRS were correct in their conclusions that Herb had the right to deduct the mortgage payments and that those payments were taxable. The chancellor then modified the divorce agreement by ordering Herb to reimburse Leigh for any additional tax liability she incurred by failing to include the amount of the mortgage payments as income on her tax returns when Herb deducted those same payments for tax years 1995 and 1996.

¶9. Herb raises three issues on appeal:

**I. WHETHER THE COURT ERRED IN MODIFYING THE PARTIES' PROPERTY SETTLEMENT AGREEMENT BECAUSE THERE WAS NO MATERIAL CHANGE IN CIRCUMSTANCES AFTER THE ENTRY OF THE JUDGMENT**

**II. WHETHER THE COURT ERRED BY REWRITING THE PARTIES' PROPERTY AGREEMENT WHICH WAS A VALID, UNAMBIGUOUS CONTRACT**

**III. WHETHER THE COURT'S RULING WAS CONTRARY TO THE CLEAR LANGUAGE OF THE UNITED STATES TAX CODE AND THAT IGNORANCE OF THE TAX LAWS SHOULD NOT ALLOW LEIGH TO MODIFY THE PARTIES' CONTRACT**

Though she did not file a cross-appeal, Leigh purports to raise the following issues on appeal:

**I. WHETHER ACCORDING TO 26 U.S.C.A. § 71 (C)(2), THE MONTHLY MORTGAGE PAYMENTS MADE BY APPELLANT ARE CONSIDERED CHILD SUPPORT INSTEAD OF ALIMONY**

**II. WHETHER THE RULING REQUIRING HERB TO REIMBURSE LEIGH FOR THE TAX LIABILITY INCURRED AS A RESULT OF AN AUDIT FROM THE IRS WAS NOT A MODIFICATION OF THE AGREEMENT**

## STANDARD OF REVIEW

¶10. Our scope of review in domestic relations matters is limited by our familiar substantial evidence/manifest error rule. *Stevison v. Woods*, 560 So. 2d 176, 180 (Miss. 1990). "This Court will not disturb the findings of a chancellor unless the chancellor was manifestly wrong, clearly erroneous or an erroneous legal standard was applied." *Bell v. Parker*, 563 So. 2d 594, 596-97 (Miss. 1990). In other words, "[o]n appeal [we are] required to respect the findings of fact made by a chancellor supported by credible evidence and not manifestly wrong." *Newsom v. Newsom*, 557 So. 2d 511, 514 (Miss. 1990).

## DISCUSSION

**I. WHETHER THE COURT ERRED IN MODIFYING THE PARTIES' PROPERTY SETTLEMENT AGREEMENT BECAUSE THERE WAS NO MATERIAL CHANGE IN CIRCUMSTANCES AFTER THE ENTRY OF THE JUDGMENT**

¶11. At the request of either party, periodic alimony may be modified by increasing, decreasing, or terminating the award via court order. *McDonald v. McDonald*, 683 So. 2d 929, 931 (Miss. 1996). Accordingly, chancellors are vested with the authority to modify awards of periodic alimony where they find that there has been a "substantial change in circumstances." *McDonald*, 683 So. 2d at 931. An award of alimony can only be modified where it is shown that there has been a material change in the circumstances of one or both of the parties. *Varner v. Varner*, 666 So. 2d 493, 497 (Miss. 1995). "The change must occur as a result of after-arising circumstances of the parties not reasonably anticipated at the time of the agreement," *Varner*, 666 So. 2d at 497, and must "be one that could not have been anticipated by the parties at the time of the original decree." *Tingle v. Tingle*, 573 So. 2d 1389, 1391 (Miss. 1990). Leigh bears the burden of proof to show that a material change in circumstances occurred after the 1993 judgment which could not have been anticipated at the time of the judgment.

¶12. 26 U.S.C. § 71 (b)(1) defines alimony or separate maintenance payments to be any payment in cash if "(A) such payment is received by (or on behalf of) a spouse under a divorce or separation instrument, or (B) the divorce or separation instrument does not designate such payment as a payment which is not includible in gross income under this section and not allowable as a deduction under section 215." Furthermore, (C) the payor and the payee spouse must not be members of the same household at the time the payment is made and (D) there must not be an obligation to make the payment for any period after the

death of the payee spouse. *Id*. The general rule with regard to alimony in the case of an individual is that a deduction is allowed that is equal to the alimony or separate maintenance payments paid during an individual's taxable year. 26 U.S.C. § 215. Applicable Treasury Regulations state that cash payments by one spouse to a third party pursuant to the terms of a divorce decree, such as mortgage payments made by one spouse on behalf of another spouse, will constitute a payment made "on behalf of a spouse." Treas. Reg. § 1.71-1T(a) Q & A-6 (1984). These tax laws regarding a former spouse's making mortgage payments on a jointly owned residence are the same laws as those in effect in 1993 when the judgment was entered.

¶13. In the present case, Leigh has not shown a material or substantial change in circumstances since the judgment was entered. The only changed circumstance that she can show is that she must pay taxes on the mortgage payments which Herb deducts as alimony. Furthermore, the trial court failed to find a change in circumstances since the judgment. Because Leigh failed to show a material change in circumstances, the chancellor incorrectly applied the standard for modification of the divorce judgment.

## II. WHETHER THE COURT ERRED BY REWRITING THE PARTIES' PROPERTY AGREEMENT WHICH WAS A VALID, UNAMBIGUOUS CONTRACT

### A. The Agreement Is a Binding Court-Approved Contract Between the Parties

¶14. A divorce agreement is "no different from any other contract, and the mere fact that it is between a divorcing husband and wife, and incorporated in a divorce decree, does not change its character." *East v. East*, 493 So. 2d 927, 931-32 (Miss. 1986). Similarly, in *Bell v. Bell*, 572 So. 2d 841, 844 (Miss. 1990), we held that when parties in a divorce proceeding have reached an agreement that a chancery court has approved, we will enforce it, absent fraud or overreaching, and we take a dim view of efforts to modify it just as we do when persons seek relief from improvident contracts.

¶15. In this case, Herb and Leigh entered into a court-approved contract regarding the disposition of their marital property, including the former marital residence and the mortgage payment associated with such property. No evidence of fraud or overreaching exists.

### B. The Agreement Is Clear and Unambiguous; Therefore, the Chancellor Must Enforce the Terms as Written

¶16. A "court is obligated to enforce a contract executed by legally competent parties where the terms of the contract are clear and unambiguous." *Merchants & Farmers Bank v. State ex rel. Moore*, 651 So. 2d 1060, 1061 (Miss. 1995). As stated in *Delta Pride Catfish, Inc. v. Home Ins. Co.*, 697 So. 2d 400, 404 (Miss. 1997), the parties are bound by the language of the contract where a contract is unambiguous. "The mere fact that the parties disagree about the meaning of a provision of a contract does not make the contract ambiguous as a matter of law." *Id*.

¶17. When a contract is clear and unambiguous, this Court "is not concerned with what the parties may have meant or intended but rather what they said, for the language employed in a contract is the surest guide to what was intended." *Shaw v. Burchfield*, 481 So. 2d 247, 252 (Miss. 1985). When this Court interprets a contract, we "look to the contract for its meaning, not what a party thereto may have thought it meant. The standard is objective, measured by the language of the contract, not by the subjective intent or belief of a party which conflicts with meaning ascertained by the objective standard." *Landry v. Moody*

***Grishman Agency, Inc.***, 254 Miss. 363, 375,181 So. 2d 134, 139 (1965). We are "concerned with what the contracting parties have said to each other, not some secret thought of one [that was] not communicated to the other." ***Mississippi State Highway Comm'n v. Patterson Enters., Ltd.***, 627 So. 2d 261, 263 (Miss. 1993).

¶18. In this case, the divorce agreement has a specific clause which states that "this is the whole and only Agreement between the parties and shall not be modified or varied by parol evidence." Leigh and Herb differ not on what the agreement says, but the applicable tax consequences of the agreement. Leigh testified that she thought the mortgage payments would not be taxable to her, and Herb testified that he never discussed the subject with anyone. Both parties agree that they never discussed the tax consequences of the divorce agreement with each other or an attorney. In the proceeding below, the lower court agreed that the contract was clear and unambiguous when it sustained Herb's motion to exclude any extrinsic evidence about the divorce agreement. With that in mind, it was error for the lower court to modify the agreement based upon its own imputed intent of the parties.

> ### C. The Tax Laws in Force When the Contract Was Made Became a Part of the Divorce Agreement Under Mississippi Law; Therefore, the Chancellor Erred by Not Enforcing the Agreement

¶19. It is axiomatic in Mississippi that the "law in force at the time that a contract is made forms a part of it and is written into the contract as much as if expressly incorporated therein." ***Mississippi Valley Gas Co. v. Boydstun***, 230 Miss. 11, 31, 92 So. 2d 334, 340 (1957). In August 1993, when Herb and Leigh entered into the divorce agreement, 26 U.S.C. §§ 71 and 215 were in effect. The Temporary Treasury Regulations were also in force. Temp. Treas. Reg. § 1.71-1t (1984). These laws provided that the periodic alimony and mortgage payments would constitute taxable alimony to Leigh and be deductible by Herb unless the parties designated them as non-taxable and non-deductible.

¶20. The trial court erred by failing to enforce the contract as written, and recognizing the tax laws which were in effect when the contract was made.

> ### D. The Chancellor Erred by Reforming the Contract

¶21. We recognize that a valid contract may be reformed in some instances where a mistake has been made. ***Allison v. Allison***, 203 Miss. 15, 25, 33 So. 2d 619, 620 (1948). The general rule in this state and elsewhere is that reformation of a contract is justified only (1) if the mistake is a mutual one, or (2) where there is a mistake on the part of one party and fraud or inequitable conduct on the part of the other. However, "[t]he mistake that will justify a reformation must be in the drafting of the instrument, not in the making of the contract." ***Johnson v. Consolidated Amer. Life Ins. Co.***, 244 So. 2d 400, 402 (Miss. 1971).

¶22. In this case, neither side claims that the mistake is due to a scrivener's error. In fact, the divorce agreement states exactly what the parties contracted to do, including how to divide the joint real property, living arrangements, Herb's responsibility to pay the mortgage on the marital home, and periodic alimony. No language is present in the divorce agreement regarding the tax consequences of any of the provisions. Leigh and Herb each testified that they did not know the tax consequences of their divorce agreement when the contract was entered into. From this, we can assume that no mistake was made in the drafting of the agreement. Therefore, the mistake is one in the making of the contract which is not a basis for reformation

under Mississippi law. Accordingly, we find that the chancellor erred by reforming the parties' divorce agreement.

### E. The Chancellor Erred by Modifying the Agreement

¶23. It is fundamental in contract law that courts cannot make a contract where none exists, nor can they modify, add to, or subtract from the terms of a contract already in existence. *Wallace v. United Miss. Bank*, 726 So. 2d 578, 584-85 (Miss. 1998). A court cannot "draft a contract between two parties where they have not manifested a mutual assent to be bound." *A. Copeland Enterprises v. Pickett & Meador, Inc.*, 422 So. 2d 752, 754 (Miss. 1982).

¶24. As stated before, neither Leigh nor Herb address the tax consequences of the mortgage payments in the divorce agreement. Furthermore, the testimony is void of any evidence that the issue was ever discussed between Leigh and Herb or their attorneys. Despite the absence of the prerequisite intent and evidence to formulate a contract, the chancellor found that the parties did not intend for the mortgage payments to be taxable to Leigh or deductible by Herb, and proceeded to add a provision to the divorce agreement wherein Herb was required to reimburse Leigh for the tax liability created by Herb's payment of the mortgage payments.

¶25. Since the parties never came to an agreement with respect to the tax consequences of the mortgage payments, no meeting of the minds occurred, and thus, no contract between the parties with regard to this issue was formed. It was improper for the trial court to add a provision to the existing divorce agreement.

### III. WHETHER THE COURT'S RULING WAS CONTRARY TO THE CLEAR LANGUAGE OF THE UNITED STATES TAX CODE AND THAT IGNORANCE OF THE TAX LAWS SHOULD NOT ALLOW LEIGH TO MODIFY THE PARTIES' CONTRACT

¶26. The Internal Revenue Code, 26 U.S.C. § 71, provides what payments to, or on behalf, of a former spouse, are considered alimony which must be included in the payee's gross income. Furthermore, § 215 provides that payor spouse may deduct amounts which qualify as alimony under § 71.

¶27. Under 26 U.S.C. § 71(b)(1)(B) of the Internal Revenue Code, all alimony payments are included in the payee's income and may be deducted by the payor unless the divorce agreement specifically designates them as beyond the scope of §§ 71 and 215. This "designation" must be specific." *Id.*

¶28. Herb and Leigh's divorce agreement does not address the tax effects of alimony. The silence of a divorce agreement with respect to whether support payments are taxable does not render that agreement ambiguous and open to interpretation. In fact, the Internal Revenue Code provides for what should happen in this exact circumstance. The divorce agreement must specifically state that mortgage payments are not to be considered taxable under § 71. If there is no such designation, then such payments are deemed to be deductible by the payor and included in the payee's gross income. If Leigh and Herb had intended for the mortgage payments not to be taxable to Leigh, they had the opportunity to include such a designation in their property settlement agreement to that effect. Treas. Reg. § 1.71-1t(b), Q&A-6, Q&A-8 (1984). Since no specific designation exists in Leigh and Herb's agreement, the Internal Revenue Code controls what payments are deductible by Herb and taxable to Leigh. 26 U.S.C. § 71.

¶29. Chancellors must consider the estimated amount of income taxes the respective parties must pay on

their incomes when determining the provisions of a divorce agreement. *Parsons v. Parsons*, 678 So. 2d 701, 703 (Miss. 1996). It was incumbent for Leigh and Herb to rely upon their tax advisor or attorney to advise them of the tax consequences of the divorce agreement. Both testified that this was not done. Nonetheless, ignorance of the tax laws is not a basis for modification of the divorce agreement.

¶30. As discussed above, Leigh did not file a notice of cross-appeal, though she purports to raise the following issues on appeal:

> **I. WHETHER ACCORDING TO 26 U.S.C.A. § 71 (C)(2), THE MONTHLY MORTGAGE PAYMENTS MADE BY APPELLANT ARE CONSIDERED CHILD SUPPORT INSTEAD OF ALIMONY**
>
> **II. WHETHER THE RULING REQUIRING HERB TO REIMBURSE LEIGH FOR THE TAX LIABILITY INCURRED AS A RESULT OF AN AUDIT FROM THE IRS WAS NOT A MODIFICATION OF THE AGREEMENT**

¶31. Herb responds that Leigh failed to perfect a cross-appeal in this matter thereby making consideration of these new assignments of error by this Court improper. Failure to file a notice of cross-appeal is usually considered fatal to a cross-appellant's issues. *Lindsey v. Lindsey*, 612 So. 2d 376, 378 (Miss. 1992). Though we do not directly address the issues Leigh raises in her purported cross-appeal, resolution of the issues raised by Herb on direct appeal necessarily entails some discussion of Leigh's assignments of error. In reversing the decision of the chancery court, we are impliedly rejecting Leigh's contentions.

## CONCLUSION

¶32. For these reasons, the judgment of the Hinds County Chancery Court is reversed.

¶33. **REVERSED AND RENDERED.**

> **PRATHER, C.J., PITTMAN AND BANKS, P.JJ., McRAE, SMITH, MILLS, WALLER AND COBB, JJ., CONCUR.**