# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 1999-CT-02068-SCT

*IN THE MATTER OF THE DISSOLUTION OF THE MARRIAGE OF CYNTHIA C. PROFILET AND WILLIAM BINDLEY PROFILET, JR:*

*WILLIAM BINDLEY PROFILET, JR.*
*v.*
*CYNTHIA C. PROFILET*

### ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 10/26/1999 |
| TRIAL JUDGE: | HON. GAIL SHAW-PIERSON |
| COURT FROM WHICH APPEALED: | MADISON COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | JOHN W. CHRISTOPHER |
| ATTORNEYS FOR APPELLEE: | JESSE LEE HOWELL, III |
| | ROBERT L. GOZA |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | AFFIRMED IN PART; VACATED AND REMANDED IN PART - 09/12/2002 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 10/3/2002 |

EN BANC.

WALLER, JUSTICE, FOR THE COURT:

### INTRODUCTION

¶1. William Bindley Profilet, Jr., M. D., and Cynthia C. Profilet were divorced in 1982. They agreed to a property settlement and to periodic monthly alimony payments of $400 to Cynthia. Thereafter, Cynthia filed a petition to modify the alimony payments. William did not appear at the hearing on the modification petition. The chancellor found that there had been a material change in circumstances and increased the alimony payment from $400 to $4000 per month. William's appeal was assigned to the Court of Appeals,

which affirmed. William filed a petition for writ of certiorari in which he alleged that the decision of the Court of Appeals is contrary to previous Supreme Court decisions. We granted the petition and now find that the chancellor did not err in refusing to grant William's request for a continuance. We vacate the increase in alimony and remand, however, for further proceedings on the issues of whether sufficient changes in circumstances had occurred to support an upward modification of alimony, whether a change in circumstances could reasonably have been anticipated, and whether the chancellor based her determination of the amount of increase on erroneous calculations and other facts.

## FACTS

¶2. William and Cynthia were divorced in 1982. The agreed divorce decree provided that Cynthia would receive $400 per month in alimony. At the time of the divorce, Cynthia was a schoolteacher, and William was a doctor making approximately $80,000 per year. Cynthia had psychological problems since at least 1972 but she was still able to work and to function normally. In 1999, Cynthia filed a petition for modification. She alleged that there had been a material change in circumstances in that William's income from his medical practice had increased dramatically and that her health had deteriorated. She alleged that she was no longer able to hold a job and was receiving social security disability benefits, and that her medical bills were beyond her means to pay. She sought an increase in alimony to $4000 per month.

¶3. The M.R.C.P. 81 summons stated that the case would be heard on May 20, 1999. On March 22, 1999, the chancellor issued an order setting a hearing for May 19, 1999. In April, William filed a waiver of process and entry of appearance. He filed a motion for continuance on May 13 in which his attorney claimed that he had to be in court on another matter that day. The motion for continuance was never ruled upon, and the case proceeded to trial on May 19. William and his attorney did not appear at that hearing.

¶4. At the hearing, Cynthia put on proof of her disability. Her psychologist testified that she had previously been "very creative, very dynamic, high energy" but that she had since deteriorated. The psychologist testified that Cynthia now suffered from bipolar disorder and that Cynthia had had a problem with depression since about 1972, but the condition had worsened and that she was now unable to work. Cynthia testified that she had worked for 15 years as a teacher after the divorce but that she was now unable to work due to her mental problems. She stated that she had been hospitalized on several occasions, owed several thousand dollars in medical bills and that her monthly expenses, including her medical bills and prescription drugs, exceeded her income by several thousand dollars.

¶5. The chancellor found that there had been a material change in circumstances and awarded an increase in alimony from $400 to $4000 per month. Cynthia was also awarded attorney's fees. On William's appeal a divided Court of Appeals affirmed. We granted William's petition for writ of certiorari.

## DISCUSSION

### I. WHETHER THE CHANCELLOR ERRED IN CONDUCTING THE TRIAL ON A DATE OTHER THAN THE DATE NOTED IN THE RULE 81 SUMMONS.

### II. WHETHER THE TRIAL COURT ABUSED ITS DISCRETION IN NOT GRANTING THE MOTION FOR CONTINUANCE.

¶6. The decision to grant or deny a motion for a continuance is within the discretion of the trial court and will not be grounds for reversal unless shown to have resulted in manifest injustice. *Coleman v. State*, 697

So. 2d 777, 780 (Miss. 1997); *Atterberry v. State*, 667 So. 2d 622, 631 (Miss. 1995). A denial of a motion for continuance will not be reversed unless prejudice to the movant results. *Ekornes-Duncan v. Rankin Med. Ctr.*, 808 So. 2d 955, 959 (Miss. 2002).

¶7. The Court of Appeals found no abuse of discretion because William had failed to ask for a continuance in a timely manner when he filed the motion for a continuance three working days before the case was set to be heard even though it had been set for approximately two months. The Court of Appeals majority relied on M.R.C.P. 6 which requires a motion to be served five working days before it is to be heard.

¶8. The chancellor did not abuse her discretion in refusing William's motion for a continuance. "A written motion, other than one which may be heard ex parte, and notice of the hearing thereof, shall be served not later than five days before the time fixed for the hearing, unless a different period is fixed by these rules or by order of the court." M.R.C.P. 6(d). The summons was issued on March 16, 1999, and the order changing the hearing date was executed two days later. The order setting the trial date in the case William's counsel avers conflicted with the case sub judice was dated March 1, 1999. Thus, for two months William's counsel knew of this conflict. Yet, he did not file a motion for continuance until the close of business on May 13, 1999, leaving only three working days prior to the date set for trial.

¶9. Neither William nor his counsel have given any explanation of excusable neglect which would allow the trial court to have excused his failure to comply with M.R.C.P. 6(d).

¶10. We have held that, absent unusual circumstances, a trial setting in one court will entitle an attorney to a continuance in another case:

> There is a widespread practice in the courts of this state -- federal courts and state courts, trial courts and appellate courts -- recognizing that, absent unusual circumstances, a bona fide trial setting in one court will entitle an attorney to a continuance of other cases which may subsequently be called for setting in other courts. *See* Rule G-7, Local Rules, United States District Court for the Northern District of Mississippi. No doubt courts in the control of their dockets have authority to require lawyers, as officers of the court, to perform tasks many regard as necessitating skills in magic. We do not, however, expect a lawyer to be two places at once. We had thought this view universally accepted. So that there will be no doubt hereafter, we declare the above practice a rule which is enforceable in every court of this state.

*Leonard v. Leonard*, 486 So. 2d 1240, 1241 (Miss. 1986). *Leonard*, however, does not require that courts turn a blind eye when lawyers fail to comply with the rules of procedure. In fact, the party requesting a continuance in *Leonard* filed the motion fifteen days prior to the hearing and brought the motion to the judge's attention. We condemned the chancellor's "automatic policy that in a certain type of case requests for continuances 'are not granted by this court under any circumstances.'" *Id.*

¶11. Such circumstances, however, do not exist in the case at bar. William's counsel filed a motion for continuance stating that he had another trial set for May 19, 1999. However, opposing counsel in the other case in Rankin County Chancery Court filed a motion for continuance, which was granted; thus there was no valid reason why William's counsel was unable to appear for the hearing in this case. In fact, counsel merely returned to his office. The fact remains that neither Profilet, nor his counsel, appeared in court on May 19. The chancellor noted their absence, and proceeded with the case.

¶12. Furthermore, William's claims are procedurally barred. William never filed a motion for a new hearing or to modify or set aside the judgment in this case. Thus, effectively this Court is deciding an issue never presented to the chancellor below. *Cannon v. Cannon*, 571 So. 2d 976 (Miss. 1990), presents the opposite situation. In *Cannon*, counsel was actually in the midst of trial in another court and had made a timely motion for a continuance. The continuance was granted, but not for a day that counsel had requested. Rather, the day was still in the midst of the trial which had prompted the initial motion. Recognizing this, counsel believed that he might be finished in time to appear in the *Cannon* matter. There were a number of phone calls between counsel and opposing counsel, as well as the court. Specifically, on the day trial was set, counsel telephoned the judge as the judge entered the courthouse explaining the situation. Trial was held without counsel or his client, and counsel later moved to set aside the judgment based on this difficulty. We reversed the case, finding that it was an abuse of discretion to deny the motion to set aside judgment. In the present case, William made no effort to notify the court earlier than May 13, 1999, of the conflict. His motion for a continuance was not timely, and it was never ruled on as he failed to appear to argue the motion on May 19. In fact, William neither appeared nor made any attempt to contact the court on May 19, the day set for trial. Finally, he made no motion in the trial court to alter the judgment.

¶13. We, therefore, find that the chancellor did not abuse her discretion in denying William's motion for continuance.

### III. WHETHER THE CHANCELLOR ERRED IN MODIFYING THE ALIMONY AWARD.

¶14. William also claims that the chancellor's decision to modify the 1982 divorce decree and to increase the alimony payment was erroneous and contrary to prior decisions of this Court. Cynthia argued that there had been a substantial change in circumstances in that her mental condition had deteriorated and that William's financial condition had improved. The chancellor's final order concludes only that there had been a change in circumstances without addressing the claims with specificity.

¶15. William claims that the parties mutually agreed to the alimony amount in the agreed divorce judgment in 1982. He claims that Cynthia had mental problems at that time of the divorce, that future mental problems were foreseeable then, and that there was therefore no substantial change in circumstances. In *Ivison v. Ivison*, 762 So. 2d 329 (Miss. 2000), we held that, absent fraud or overreaching, a chancellor should take a dim view of efforts to modify improvidently agreed-upon divorce judgments. However, *Ivison* noted that agreed divorce judgments are still modifiable in the event of a change in circumstances not foreseen at the time of the agreement. *Id.* at 334. In order for a chancellor to find a substantial change in circumstances, there must have been some change which resulted from "after-arising circumstances of the parties not reasonably anticipated at the time of the agreement" and furthermore the change must "be one that could not have been anticipated by the parties at the time of the original decree." *Id*. *See also Steiner v. Steiner*, 788 So.2d 771 (Miss. 2001); *Varner v. Varner,* 666 So. 2d 495, 497 (Miss. 1995); *Tingle v. Tingle*, 573 So. 2d 1389, 1391 (Miss. 1990); *Bell v. Bell*, 572 So. 2d 841 (Miss. 1990).

¶16. The agreed divorce judgment here was therefore subject to modification only if there had been a material change in circumstances which could not have reasonably been anticipated at the time of the divorce. The chancellor found that there had been a change in circumstances but made no specific finding on whether the changes could have been reasonably anticipated. The chancellor did find that Cynthia's depression and other mental problems had preceded the divorce by approximately ten years; yet she made

no further findings in support of her conclusion that alimony should be increased tenfold. We hold that the chancellor's findings as to a change in circumstances and specifically, whether the change could reasonably have been anticipated, to be insufficient and remand so that the chancellor may specifically address whether Cynthia's current mental condition was reasonably foreseeable at the time of the divorce. Additional findings should also be made as to the foreseeability that William's income would rise after Cynthia agreed to the divorce decree in 1982.

¶17. Finally, William claims that the chancellor based the decision to award $4000 per month in alimony on incorrect findings of fact. Without addressing these claims in detail, we note that the chancellor apparently confused the gross receipts from William's medical practice with his net income. She also relied on his personal total assets without taking his liabilities into account. We also note that the chancellor apparently based the amount of the award in part on the fact that the parties had been married for sixteen years. In fact, these parties had been married twice, and the second marriage, which resulted in the divorce decree at issue here, lasted less than a year and a half. We assume that these matters would have been brought to the chancellor's attention if there had been a contested hearing attended by lawyers for both parties. In any event, the record is insufficient to support the chancellor's findings.

## CONCLUSION

¶18. The chancellor did not abuse her discretion in declining to continue this matter. However, we vacate the chancellor's increase in alimony and remand for further proceedings on the issues of whether sufficient changes in circumstances had occurred to support an upward modification of alimony, whether a change in circumstances could reasonably have been anticipated, and whether the chancellor based her determination of the amount of increase on erroneous calculations and other facts.

¶19. **AFFIRMED IN PART; VACATED AND REMANDED IN PART.**

**PITTMAN, C.J., SMITH, P.J., COBB, AND CARLSON, JJ., CONCUR. EASLEY AND GRAVES, JJ., CONCUR IN RESULT ONLY. McRAE, P.J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. DIAZ, J., NOT PARTICIPATING.**