IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
June 21, 2016 Session

## EMILY WADE TURNER v. JOHN B. TURNER, JR.

**Appeal from the Circuit Court for Shelby County
No. CT-000747-15  Felicia Corbin Johnson, Judge**

———————————————————

**No. W2015-01165-COA-R3-CV – Filed August 11, 2016**

———————————————————

Mother filed a petition to enroll and enforce a Mississippi divorce decree in Tennessee requesting the trial court to order Father to continue paying one-half of the parties' child's private school tuition and costs. Father opposed Mother's request and instead argued that the parties' property settlement agreement did not mandate private schooling, that it was reasonable for him to withhold consent to private schooling, and that, in the alternative, the costs associated with private schooling should be apportioned based on the parties' incomes. The trial court found in favor of Mother on all issues. Father appealed. Discerning no error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

J. STEVEN STAFFORD, P.J.,W.S., delivered the opinion of the court, in which W. NEAL MCBRAYER, and KENNY ARMSTRONG, JJ., joined.

John B. Turner, Jr., Memphis, Tennessee, Pro Se.

Kathy Baker Tennison, Memphis, Tennessee, for the appellee, Emily Wade Turner.

**OPINION**

**BACKGROUND**

John B. Turner, Jr., ("Father") and Emily Wade Turner ("Mother") were divorced on October 24, 2011, by order of the Chancery Court of DeSoto County, Mississippi. Prior to their divorce, on October 12, 2011, the parties entered into a Child Custody, Support, and Property Settlement Agreement ("PSA"), which was incorporated into the final judgment.

The parties have one minor child ("child"), who was six years old and enrolled in a private school at the time the parties divorced. The sole issue in this case concerns the child's continuation of private school education based on the terms of the PSA. Under a section titled "Child Support," the PSA provides, in relevant part, that the parties acknowledge that the child was attending a private school in Memphis, Tennessee, at the time of their divorce. The PSA further provides that each party is responsible for one-half of the "child's tuition, institutional after school care costs, books, mandatory fees, uniforms, and one-half of all agreed upon extra curricular [sic] activities as long as both parents agree to the choice of said private school." In addition, the PSA states that neither party shall unreasonably withhold his or her agreement. The parties also must "agree annually about the minor child's school arrangement for that year." In addition to splitting tuition, both parties were also required to pay one-half of the cost for a vehicle, automobile insurance, and college-related expenses pursuant to the PSA once the child attained the age where these items were appropriate. Last, under a section titled "Choice of Law," the PSA provides that the law of the State of Mississippi governs the agreement "in all respects."

Sometime during November 2014, Father advised Mother that he could no longer afford to pay one-half of the child's private school tuition. He indicated that he did not consent to the child's re-enrollment at her current private school for the 2015-2016 school year. At this time, the child was nine years old and had attended her current private school from junior kindergarten through fourth grade. Based on Father's statements, Mother filed a Petition for Registration, Enrollment, and Enforcement of Mississippi Divorce Decree in the Shelby County Circuit Court on February 23, 2015. Mother requested enrollment and enforcement of the parties' divorce decree and an order directing Father to continue paying his one-half share of the child's private school tuition and expenses.

Father filed an answer to Mother's petition on March 29, 2015, generally denying all substantive allegations and requesting dismissal of her claim. Father did, however, admit in his answer that the divorce decree should be enrolled in Tennessee. On April 13, 2015, the trial court entered a consent order enrolling the divorce decree.

The trial court conducted a hearing on May 13, 2015. Mother and Father were the only witnesses. In lieu of a transcript from the hearing, the parties submitted a statement of the evidence elicited at trial. The statement of evidence indicates that both parents are currently licensed attorneys in the State of Tennessee. At the time of trial, Mother was employed as a corporate attorney earning $152,000.00 per year.

Shortly before the parties' divorce, the law firm that employed Father dissolved, and he practiced as a solo practitioner for a little over one year. At this time, his only "certain" income was approximately $1,300.00 per month earned as a part-time prosecutor for the City of Horn Lake, Mississippi. The evidence shows that Father accumulated credit card debt to meet his monthly expenses during the time he was self-employed, amounting to a significant

amount of debt. This debt has not yet been paid in full. Currently, Father is employed as an Assistant County Attorney for Shelby County, Tennessee, earning approximately $89,000.00 per year. Father testified that he received a 3% increase in salary, but it is unclear from the statement of the evidence whether his $89,000.00 income includes this raise. He conceded that he earns more currently than he did at the time the parties executed the PSA. Attached to the statement of the evidence is an exhibit showing Father's monthly income and expenses, indicating that Father has a $21.00 surplus each month after paying his expenses. Father's expenses include his payment of one-half of the child's private school tuition. Father did not enter the income and expense report as an exhibit at trial, despite its designation as an exhibit attached to the statement of evidence. Instead, the statement of the evidence indicates that Father read the figures aloud during his testimony. Father's expenses do not include any contributions to retirement savings, other than an obligatory contribution to the Shelby County Pension Fund. His expenses also do not include any savings that could be assigned to his future obligation under the PSA of paying for one-half of the costs associated with the child's vehicle, automobile insurance, or college expenses. Father also indicated that he expected to marry in August 2015 but his finances would not be adversely affected by the marriage.

Father testified that he agreed to keep the child in her current private school to reduce the stress she faced from the parties' divorce. Father stated that he was not unhappy with the child's education at the private school. However, Father advised that he could not afford to continue paying one-half of the child's tuition and expenses, which totaled $622.50 per month, in addition to saving for the child's college education, his attorney's fee bills, and credit card payments. The child's private school tuition and expenses is in addition to Father's monthly child support obligation of $729.00 per month. Father testified that he conducted research on other options for the child's education. Farmington Elementary School, which is part of the Germantown Municipal School system, is the public elementary school for which the child is zoned based on Mother's residence. The evidence shows that, "[p]er research done by Father, Farmington [Elementary School] is among the most highly rated elementary schools in the State of Tennessee." Father stated that the child would not be harmed by changing schools.

The statement of evidence indicates that Mother testified that removing the child from her private school would not be in the child's best interest. Mother testified that if the child changed schools in 2015, she would then be required to change again in 2016 to move to another public school, Houston Middle School. Mother also testified that the parties "always intended that the child would receive a Christian education."

The trial court entered an order on Mother's petition on May 26, 2015. The trial court found that the three paragraphs, discussed *infra*, governing the child's educational expenses was "somewhat ambiguous." After applying the rules of contract interpretation and considering the intent of the parties, the trial court found that the word "tuition" and the

phrase "choice of said private school," *inter alia*, evidenced the parties' intent for the child to attend private school. The trial court also found that the "execution of a contract with any school" was indicative of a private school arrangement. Further, the trial court concluded that Father's withholding of consent was unreasonable because Father was able to meet his obligation under the PSA and still have a surplus of funds each month. The trial court additionally found that Father intended to marry in August 2015, and this was a voluntary assumption of any financial obligations associated with the new marriage. The trial court further concluded that it was not in the child's best interest to switch schools. Finally, the trial court declined to allocate the private school tuition and expenses differently than set forth in the PSA. Father timely appealed.

## ISSUES

Father presents three issues for our review, which we have slightly restated:

> 1. Whether the trial court erred in interpreting the PSA to mean that the child must attend a private school, ruling out the possibility of public education.
> 2. Whether the trial court erred in determining that Father's withholding of consent to keeping the child in private school was unreasonable.
> 3. Whether the trial court erred in declining to apportion all costs associated with private school between the parties based on their relative incomes.

## STANDARD OF REVIEW

In this appeal from a bench trial, we review the trial court's findings of fact de novo with a presumption of correctness, unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d). No presumption of correctness, however, attaches to the trial court's conclusions of law, and our review is de novo. ***Blair v. Brownson¸*** 197 S.W.3d 681, 684 (Tenn. 2006) (citing ***Bowden v. Ward***, 27 S.W.3d 913, 916 (Tenn. 2000)).

## ANALYSIS

### Contract Interpretation

To begin, the parties do not dispute that Mississippi law applies to the issues in this case. Courts in Tennessee honor choice of law provisions so long as the state whose law is chosen bears a reasonable relation to the issue presented and absent a violation of the forum state's public policy. ***Wright v. Rains***, 106 S.W.3d 678, 681 (Tenn. Ct. App. 2003). Thus, this Court will honor the parties' decision to apply Mississippi law to the case-at-bar.

- 4 -

Mississippi law treats property settlement agreements that have been incorporated by reference into a divorce decree as contractual in nature. *Wilson v. Wilson*, 53 So. 3d 865, 869 (Miss. Ct. App. 2011) ("[P]roperty-settlement agreements are considered contractual."); *East v. East*, 493 So.2d 927, 931–32 (Miss. 1986) ("A true and genuine property settlement agreement is no different from any other contract, and the mere fact that it is between a divorcing husband and wife, and incorporated in a divorce decree, does not change its character."); *see also In re Estate of Kennington*, 204 So.2d 444, 449 (Miss. 1967), *corrected*, 206 So.2d 337 (Miss. 1968) ("Neither the approval of the contract by the trial court nor the incorporation in the decree of its provisions relating to the monthly payments, had the effect of stripping the obligation of its contract character . . . ."). This appears to be the case even where a PSA contains voluntary agreements related to the support of a child. *See Seeley v. Stafford*, 840 So. 2d 111, 113 (Miss. Ct. App. 2003) (holding that when the parties enter into a voluntary agreement to pay a certain amount of child support in a PSA, Mississippi courts "will enforce it" much like other contractual agreements). As in Tennessee, Mississippi law considers contract interpretation to be a question of law, which is reviewed de novo. *McFarland v. McFarland*, 105 So.3d 1111, 1118 (Miss. 2013). Thus, we turn to the rules governing contract interpretation to ascertain the meaning of the PSA in this case.

The rules governing contract interpretation in Mississippi are largely similar to those in Tennessee. According to the Mississippi Supreme Court, a "court is obligated to enforce a contract executed by legally competent parties where the terms of the contract are clear and unambiguous." *Merchants & Farmers Bank v. State ex rel. Moore*, 651 So.2d 1060, 1061 (Miss. 1995). If a contract is unambiguous, the parties are bound to the contract. *Delta Pride Catfish, Inc. v. Home Ins. Co.*, 697 So.2d 400, 404 (Miss. 1997). The Mississippi Supreme Court has opined:

> The mere fact that the parties disagree about the meaning of a provision of a contract does not make the contract ambiguous as a matter of law. When a contract is clear and unambiguous, this Court is not concerned with what the parties may have meant or intended but rather what they said, for the language employed in a contract is the surest guide to what was intended.

*Ivison v. Ivison,* 762 So.2d 329, 335 (Miss. 2000) (quotations omitted). Additionally, courts in Mississippi have held that when divorcing parties reach an agreement that is subsequently approved by the court, courts should enforce it and take a "dim view" of efforts to modify it "just as we do when persons seek relief from improvident contracts." *Speed v. Speed*, 757 So.2d 221, 224–25 (Miss. 2000). In this case, Mother and Father entered into a court-approved contract regarding the child's education, and the record sets forth no evidence

- 5 -

indicating fraud or overreaching. Thus, we must consider whether the PSA is ambiguous as to the terms surrounding the child's education.

The trial court found that the provisions regarding the child's education were "somewhat ambiguous" but only examined language within the four corners of the PSA to ascertain the parties' intentions. After construing the provisions in the PSA with relation to each other, it found that the PSA's use of the terms "tuition," "contract," and the phrase "execution of a contract with any school" would only be applicable to private schools. The trial court's order does not rely upon any of the parties' testimony or other extrinsic evidence to ascertain the meaning of the PSA. After examining the language in the PSA, the trial court determined that the parties intended for the child to only attend a private school, and not a public school.[1]

While we note that the PSA is not a model of clarity, we agree with the substance of the trial court's analysis and conclusion that only the language of the PSA is necessary to ascertain the meaning of the contract. As stated by the trial court, the PSA is "somewhat ambiguous" as to parties' intent that the child only attend private school. However, after examining all of the provisions together and applying the canons of contract interpretation, the parties' intent to send the child only to private school becomes manifestly clear. *Knight v. Minter*, 749 So.2d 128, 133 (Miss. 1999) ("[I]f the language within the instrument's 'four corners' is ambiguous, then apply the applicable canons of construction in a discretionary manner."); *Brown v. Hartford Ins. Co.*, 606 So.2d 122, 126 (Miss. 1992) ("When construing a contract, we will read the contract as a whole, so as to give effect to all of its clauses."). To reach this conclusion, we need only analyze the language in the PSA.

First, and most importantly, the PSA plainly omits any affirmative indication that public school was a possibility. Instead, as noted by the trial court, the PSA provides that both parties are responsible for one-half of all costs "so long both parents agree to the choice of said private school[.]" The PSA does not provide the parties with an ability to agree to the choice of *any* school, but to the choice of a private school. Additionally, as noted by the trial court, the PSA deals only in words and phrases that would be applicable to private schooling, such as "tuition" and "execution of a contract with any school." Furthermore, the parties chose to include a provision that Father's total obligation would be one-half of the cost of a school commensurate in cost with "Evangelical Christian School or similar tier school." This evidences an intent that the parties agreed to the cost of a certain type of school; any provision referring to cost or tuition would be rendered superfluous if the parties intended free public education as an option. *Facilities, Inc. v. Rogers–Usry Chevrolet, Inc.*, 908 So.2d 107, 111 (Miss. 2005) ("When construing a contract, we will read the contract as a whole, so as to give effect to all of its clauses."); *Shapleigh Hardware Co. v. Spiro*, 106 So. 209 (Miss.

---

[1] The trial court did, however, rely upon extrinsic evidence to determine whether Father's withholding of consent was unreasonable. *See* discussion *infra.*

1925) ("In construing a written contract the court will, if reasonable, give all of its provisions effect[.] [N]one of them will be stricken down as meaningless."). To conclude otherwise would be failing to "harmonize the provisions in accord with the parties' apparent intent." *Pursue Energy Corp. v. Perkins*, 558 So.2d 349, 352 (Miss. 1990). While we note that the individual words and phrases in the PSA are not particularly explicit, when the provisions are reconciled harmoniously, the parties' intent is clear that they intended the child to attend only private school. *See Pursue Energy Corp. v. Perkins*, 558 So.2d 349, 352 (Miss. 1990) (citing Blass & Richey, *An Analysis of the Right of Duties of the Holder of the Executive Right*, XLI Miss. L. J. 189, 191 & 191 n.10 (1970)) (explaining that particular words are not determinative of intent but courts should endeavor to ascertain intent from the instrument as a whole). It is also illogical to conclude that the parties would set forth detailed conditions for the child's schooling but then fail to omit the possibility of public education and any conditions governing such, if they intended public school as an option. Here, not only were both parties represented by counsel during the formation of the PSA, but both parties are themselves licensed attorneys. Because this is clear based only upon review of the four corners of the PSA, we need not address any parol or extrinsic evidence. *Gaiennie v. McMillin*, 138 So.3d 131, 135 (Miss. 2014) (requiring the review of parol or extrinsic evidence only when application of the canons fails to reveal a clear meaning). We affirm the trial court's ruling that the PSA provides for the child to attend private school.

## Father's Withholding of Consent

Father next contends that his withholding of consent to private schooling was not unreasonable. He appears to argue that, due to the cost of private school, he is unable to save for retirement, save for one-half of the child's future car and college expenses (as mandated by the PSA), or save for the "normal exigencies of life." Father points out that his monthly surplus after payment of all of his obligations amounts to $21.00. He asserts that it is not reasonable to demand that he live on a "financial razor's edge." He also argues that Mother did not present any evidence to show that his withholding of consent was unreasonable.

The trial court found that Father's withholding of consent was unreasonable. The trial court noted that Father was able to meet his monthly obligations without having a deficit. Furthermore, Father's stated reasons for withholding consent were that he was unable to retire certain debts and save for the child's college and vehicle. According to the trial court, these reasons did not justify relieving Father of his current obligation to pay for one-half of the child's private school tuition.

Mississippi courts afford deference to property settlement agreements reached in divorce. *West v. West*, 891 So.2d 203, 211 (Miss. 2004). As stated by the Mississippi Supreme Court:

In property and financial matters between the divorcing spouses

themselves, there is no question, that absent fraud or overreaching, the parties should be allowed broad latitude. When the parties have reached agreement and the chancery court has approved it, we ought to enforce it and take a dim view of efforts to modify it, as we ordinarily do when persons seek relief from their improvident contracts.

*Speed v. Speed*, 757 So.2d 221, 224–25 (Miss. 2000).

Father argues that, because he is left with only a surplus of $21.00, it is impossible for him to comply with his other obligations (such as paying his share of the child's college tuition and vehicle). Although not cited by Father, for the sake of completeness, we note that a property settlement agreement may be reformed on the basis of impossibility of performance. *Townsend v. Townsend*, 859 So.2d 370, 375–76 (Miss. 2003) (citing *Dilling v. Dilling*, 734 So.2d 327, 335–36 (Miss. Ct. App. 1999)).[2] Father claims that he is unable to save for the child's **future** college tuition and costs and a vehicle for the child when she is of driving age; however, the PSA does not mandate that he save for these **future** items, only that he pays his share when they come due.[3] Accordingly, it is undisputed that Father is presently able to afford all of his assumed obligations that are currently owed upon pursuant to the PSA, including the child's private school tuition, as evidenced by his monthly surplus of $21.00. Any argument that he cannot save for his future obligations is premature and unpersuasive to the issue of private school tuition that is presently before this Court. If Father is unable to afford the items in the future without having a monthly surplus, such issue would be more appropriately brought at that time.[4]

It also warrants repeating that the parties themselves executed and entered into the PSA, which included Father's obligation to pay one-half of the child's private school tuition. In the parties' divorce decree, the divorce court recognized that the "parties[] hav[e] agreed that a [PSA] has been reached . . . ." The PSA was not a proclamation by any court but rather

---

[2] This reasoning comports with Mississippi Code Annotated § 93-5-2(2), which provides:

> If the parties provide by written agreement for the custody and maintenance of any children of that marriage and for the settlement of any property rights between the parties and the court finds that such provisions are adequate and sufficient, the agreement may be incorporated in the judgment, and such judgment may be modified as other judgments for divorce.

[3] Common sense also dictates that, once Father's obligation to pay his share of the child's college expenses arises, he will no longer be paying for the child's private school tuition.

[4] This Court is not in the business of speculating as to future events. For example, while the obligation to pay the child's vehicle expenses will likely increase Father's expenses in the future, it is also possible that Father's income could increase in that time, given his recent raise.

a voluntary assumption of duties by the parties. Furthermore, the PSA indicates that the parties entered into it free from undue influence, fraud, coercion, or misrepresentation, and agreed to all terms included therein. Mother's and Father's signatures appear on all pages of the PSA, and their notarized signatures appear at the end of the document. We also note that Father had no objection to the child's current school arrangement other than the cost.

Father voluntarily assumed the foregoing obligations, including the future purchase of a vehicle for the child and her college tuition and costs, not knowing what his future income would be. Absent a properly supported request for modification, he cannot now seek to escape these obligations that he freely assumed and still can afford to pay. Although Father indicates that such conclusion will leave him on a "financial razor's edge," it is Father's own voluntary assumption of such obligations that cause him the very strain he complains of. Indeed, Father made this agreement when he was earning substantially less than he is now.[5] Based on the foregoing, it was unreasonable for him to withhold his consent to paying his share of the child's private school tuition and costs. We affirm the trial court's ruling in this regard.

## Apportionment of Costs

Last, Father contends that the trial court erred when it declined to apportion the child's private school tuition between the parties based upon their incomes. He argues that, inasmuch as the trial court "believed it could not do so, at minimum, remand is necessary." As stated above, Section 93-5-2(2) provides that a PSA may be incorporated in a judgment, "and such judgment may be modified as other judgments for divorce."

Father aptly cites to Mississippi Code Annotated Section 93-11-65(2), which provides:

> Provided further, that where the proof shows that both parents have separate incomes or estates, the court may require that each parent contribute to the support and maintenance of the children in proportion to the relative financial ability of each.

Section 93-11-65 refers to the chancery courts' authority in presiding over and entering a ruling in a divorce proceeding. Thus, while it is correct that chancery courts in Mississippi may require an apportionment of child support costs[6] relative to the parties' incomes, the

---

[5] We also note that, like Tennessee, a parent may seek a modification of child support based upon a substantial and material change in circumstances. ***Tedford v. Dempsey***, 437 So.2d 410, 417 (Miss. 1983). Here, Father does not allege that such a change in circumstances has occurred sufficient to warrant modification or a suspension of Father's obligation with regard to the child's private school tuition. Indeed, as discussed *supra*, the only significant change in circumstances has been the increase in Father's income.

[6] Child support includes private school tuition and costs, according to the Mississippi Supreme Court

statute is inapplicable in this case because the parties chose to fashion an arrangement themselves by way of executing the PSA. Accordingly, we must examine whether a PSA is modifiable in the way requested by Father.

Mississippi law is inconsistent as to whether a court may make post-divorce modifications to a property settlement agreement. On one hand, Mississippi Code Annotated Section 93-5-2 provides that property settlement agreements may be incorporated into a final judgment for divorce, and such judgment may be modified. On the other hand, several Mississippi cases have held that property settlement agreements are not modifiable absent fraud, duress, or a provision permitting modification. *Wilson v. Wilson*, 53 So. 3d 865, 869 (Miss. Ct. App. 2011); *Ivison v. Ivison*, 762 So.2d 329, 334 (Miss. 2000); *Weathersby v. Weathersby*, 693 So.2d 1348, 1352 (Miss.1997); *Bell v. Bell*, 572 So.2d 841, 844 (Miss.1990); *see also East v. East*, 493 So. 2d 927, 930 (Miss. 1986) ("We have also historically recognized that parties may upon dissolution of their marriage have a property settlement incorporated in the divorce decree, and such property settlement is not subject to modification."). Yet another nuance of the issue at hand provides that property settlement agreements are modifiable "on the basis of impossibility of performance." *In re Dissolution of Marriage of Wood*, 35 So.3d 507, 515 (Miss. 2010) (citing *Townsend. v. Townsend*, 859 So.2d 370, 376 (Miss. 2003); *Dilling v. Dilling*, 734 So.2d 327, 335–36 (Miss. Ct. App. 1999)).

In the case-at-bar, assuming *arguendo* that the PSA is modifiable, we note that Father has alleged no fraud, duress, or undue influence. Additionally, no provision in the PSA permits modification of the parties' obligations to pay the child's tuition in the form requested by Father as an apportionment of the child's private school tuition and expenses. If the parties wished to apportion the child's tuition and costs for private school with respect to their relative incomes, the parties could have specified such in the PSA. Additionally, we note that Father has not alleged or attempted to prove that a substantial and material change in circumstance warrants revisiting the parties' obligations. *Tedford v. Dempsey*, 437 So.2d 410, 417 (Miss. 1983).

As to the "impossibility of performance," we stated above that Father is currently able to meet all of his current obligations pursuant to the PSA and still have a minimal surplus of funds each month. This is unlike the case of *Dilling* wherein the Mississippi Court of Appeals affirmed a reformation of the parties' property settlement agreement where it was impossible for the wife to *currently* pay the monthly mortgage payment, insurance premiums, and taxes associated with the marital home. *Dilling*, 734 So.2d at 337. However, even in *Dilling*, the Court of Appeals emphasized that the mistake leading to the wife's inability to pay the house costs stemmed from a scrivener's error, opining that the "mistake that will justify a reformation must be in the drafting of the instrument, not in the making of the

in *Southerland v. Southerland*, 816 So.2d 1004, 1006 (Miss. 2002).

contract." *Id.* at 335 (citations omitted). Father points to no evidence that his obligations set forth in the PSA regarding the child's private school tuition appear by error. Based on Father's manifested assent to the obligation and his ability to afford to pay the obligation, this Court concludes that the trial court did not err in declining to modify the PSA to apportion the child's private schooling costs between the parties based on their incomes. Therefore, the trial court's decision declining to apportion the child's private school tuition and expenses between the parties with respect to their incomes is affirmed.

## CONCLUSION

The judgment of the Circuit Court of Shelby County is hereby affirmed. This cause is remanded for further proceedings as are necessary and consistent with this Opinion. Costs are taxed to Appellant John B. Turner, Jr., and his surety.

_____
J. STEVEN STAFFORD, JUDGE