CHANDLER, J.,
FOR THE COURT:
¶ 1. Sam Nicholas appeals from an order of the Hinds County Chancery Court finding him in contempt for failure to pay alimony and other support arising from a property settlement agreement (settlement agreement) incorporated into a judgment for divorce. He asserts three issues: (1) the defenses of laches and equitable estoppel barred his ex-wife, Donna Nicholas, from asserting this claim; (2) “escalation provisions” of the settlement agreement were unenforceable; and (3) the overwhelming weight of the evidence shows that he is unable to pay the amount of support arrearage determined by the chancery court. We affirm, finding that the chancery court did not commit any error of law, and substantial evidence supported its findings of fact. Additionally, we find that statutory penalties are warranted in this case.
STATEMENT OF THE CASE
¶ 2. This action commenced on September 20, 2000, when Mrs. Nicholas petitioned the Hinds County Chancery Court for a citation of contempt based upon a failure to comply with a property settlement agreement dating back to 1981. On October 21, 2001, the chancery court found Mr. Nicholas to be in contempt, and ordered him to pay an alimony arrearage of $341,816.48, a stock dividend division ar-rearage of $111,500, and an income tax arrearage of $10,248, which was payable directly to the taxing authorities. The chancery court additionally awarded Mrs. Nicholas $10,682.45 in attorney’s fees. The chancery court further found that Mr. Nicholas was entitled to a setoff of $9,680 for property taxes which he had paid on the former marital residence, even though the settlement agreement had not required him to do so. Lastly, the chancery court found Mr. Nicholas did show a change in circumstances, and reduced the alimony required by the settlement agreement from $3,900 to $3,500 per month.
FACTS
¶ 3. Mr. and Mrs. Nicholas were divorced upon irreconcilable differences grounds in 1981, and a property settlement agreement was incorporated into the divorce decree. Mr. Nicholas confessed to adultery, and shortly after the entry of divorce, re-married. One child was born to that union, but this second marriage failed in 1989. Mr. Nicholas married a third time in 1993.
¶ 4. In 1999 and 2000, Mr. Nicholas’ income declined. He had two sources of income. He was a shareholder and legal counsel to a property management firm, Southland Management Corporation *1211 (Southland), and he was also a licensed arbitrator. Southland faced temporary losses in income when the Clinton Administration altered the procedure for paying management fees on various federal housing, which temporarily delayed Southland’s receipt of fees which it had earned. It also appears that Mr. Nicholas’ mediation practice was temporarily interrupted when the regions in which he practiced were realigned. However, the record does not support that either of these income changes were permanent. In fact, his personal income statement, filed on January 31, 2001, showed annual income of $445,000, total assets of $1,156,000, liabilities of $510,000, and net worth of $655,000.
¶ 5. The settlement agreement required that Mr. Nicholas pay $1,900 per month in alimony and $2,000 per month in child support. The settlement agreement further provided that as each child reached majority, a pro rata share of the child support would convert to alimony, so that the total amount of combined support should remain at $3,900 per month. All children born to the marriage had reached their majority at the time Mrs. Nicholas filed the petition for contempt which gave rise to this appeal. The settlement agreement also provided that Mr. Nicholas would pay all income taxes arising from the alimony.
¶ 6. The settlement agreement additionally contained “escalator provisions.” The amount of alimony was to increase each year in the same amount that the consumer price index rose. Further, the settlement agreement required Mr. Nicholas to pay one-half of all future bonuses and/or stock dividends from Southland Management Corporation, where he had worked since the corporation’s inception, as weE as one-half of any retirement program he might obtain.
¶ 7. WhEe not at issue in this appeal, the settlement agreement further required Mr. Nicholas to maintain memberships in two health clubs for his chEdren, a social club for Mrs. Nicholas, maintain Efe insurance policies, vehicles, taxes on the former marital residence as weE as a New Hampshire vacation home, and an annual vacation.
¶ 8. The parties agreed that Mr. Nicholas consistently paid the base amount of support, $3,900 per month, through 1999. In 2000, he paid $25,208, and in 2001, he paid no support. Mr. Nicholas testified that he paid approximately $1,625,000 in total support, from 1981 untE Mrs. Nicholas’ contempt action was heard on January 31, 2000.
DISCUSSION
¶ 9. AE assertions of error involve Mr. Nicholas’ central contention that enforcing the settlement agreement, both to the past and the future, is simply unfair. His argument is literally that he never should have entered into the settlement agreement, and he is now over sixty years old, and needs to prepare for his retirement. This argument is flawed. The record reflects that he had logical reasons to enter into the settlement agreement. Moreover, had he so chosen, he could have brought an action to change his support obhgations at anytime after 1981. However, while he contends that he has already paid $1,625,000 support over nineteen years, the record also reflects that he earned approximately $2,930,000. Thus, his argument that the chancery court should somehow have saved him from his own folly in entering into the settlement agreement is misplaced. Rather, it appears that he never had grounds to show a change in circumstances and that he could not afford to meet his self-imposed obligations.
*1212 ¶ 10. As to Mr. Nicholas’ retirement, the record shows that he withdrew the value of his retirement package with Southland, valued at $369,949.09, and to which the settlement agreement gave Mrs. Nicholas a one-half interest, without her knowledge, and that of this amount only approximately $43,000 remained. The chancery court ruled that the seven year statute of limitations, Mississippi Code Annotated Section 15-1^43 (Rev.1995), prevented her from raising any issue going to these funds. Mrs. Nicholas does not contest that ruling. While, at some point in time, Mr. Nicholas’ earning ability may decrease, furthering a reduction in support even greater than the chancery court granted to him, the record does not show he is unable to comply with the chancery court’s judgment.
I. LACHES AND EQUITABLE ESTOPPEL
¶ 11. The chancery court found that the seven year statute of limitations on enforcing monetary judgments barred recovery of any unpaid alimony payment which accrued seven years prior to the commencement of the present action. Miss.Code Ann. § 15-1-43 (Rev.1995). Mr. Nicholas takes no issue with that limitation, but he argued that in addition to the seven year bar, laches and/or equitable estoppel should preclude Mrs. Nicholas from enforcing any of the settlement agreement’s financial provisions, except those that he had already met. He contends that the parties had a verbal understanding that, while he would continue paying $3,900 per month in alimony, as well as income tax and at least one club membership, Mrs. Nicholas would not seek to enforce the escalator and retirement fund provisions of the settlement agreement. He states in his brief:
[f]rom Mr. Nicholas’ viewpoint, we simply question whether it is equitable to sit on your rights for twenty years — until the other party is sixty-three years old and broke; until the arrearage has grown to an amount Mr. Nicholas could never hope to pay during the remainder of his lifetime — and then try to collect the jackpot, (emphasis in original).
The chancery court rejected this argument. It found both that Mr. Nicholas failed to prove the elements of the defenses, as well as that Mr. Nicholas came into court with “unclean hands,” which prevented him from being able to assert equitable defenses.
¶ 12. Appellate review of a question of law is de novo. Burnett v. Burnett, 792 So.2d 1016(¶ 6) (Miss.Ct.App.2001). Our supreme court has held that “[t]he doctrine of laches is simply inapplicable where a claim has not yet been barred by the applicable statute of limitations.” Greenlee v. Mitchell, 607 So.2d 97, 111 (Miss.1992). See also Mississippi Dept. of Human Services v. Molden, 644 So.2d 1230, 1232 (Miss.1994). In the present case, the only claims involved on appeal are those claims not barred by the statute of limitations. Therefore, laches is inapplicable.
¶ 13. The chancery court did not consider those cases, and viewed the issue of laches on its merits. Nevertheless, even assuming some error of law, any error in this case would have been harmless, because the chancery court relied upon other grounds to find that neither laches nor equitable estoppel applied. Laches requires the party seeking to assert the defense show: “(1) delay in asserting a right or claim; (2) that the delay was not excusable; and (3) that there was undue prejudice to the party against whom the claim is asserted.” Allen v. Mayer, 587 So.2d 255, 260 (Miss.1991); Magee v. Garland, 799 So.2d 154, 158(¶ 17) (Miss.Ct. *1213 App.2001). See also Rubisoff v. Rubisoff, 242 Miss. 225, 234, 133 So.2d 534, 537 (1961). See also Overstreet v. Overstreet, 692 So.2d 88, 92 (Miss.1997). The doctrine of equitable estoppel is similar to laches in that it “requires proof of a(l) belief and reliance on some representation; (2) change of position as a result of the representation; and (3) detriment or prejudice caused by the change of position.” Mound Bayou School Dist. v. Cleveland School Dist., 817 So.2d 578, 583(¶ 15) (Miss.2002) (citing Covington County v. Page, 456 So.2d 739, 741 (Miss.1984)).
¶ 14. The chancery court explicitly stated that it found Mr. Nicholas failed to prove the elements of either laches or equitable estoppel. The chancery court found Mrs. Nicholas was credible when she testified that she delayed enforcing the settlement agreement because Mr. Nicholas told her that if she sought to enforce the settlement agreement, he would go into bankruptcy, and she would receive less then than she did by not enforcing the agreement in its entirety. In his testimony, Mr. Nicholas admitted that he told Mrs. Nicholas this, but that bankruptcy would have had such negative consequences for his business reputation, that his representations of possible bankruptcy were overstated, and that he knew that bankruptcy itself would not absolve past due alimony. Mr. Nicholas literally asserted that Mrs. Nicholas knew that his representations as to bankruptcy were false. He asserts that the chancery court should have found that Mrs. Nicholas knew he could not pay “the escalating support in 1993 and thereafter. Had [Mrs. Nicholas] sued Mr. Nicholas in 1993, he would have filed a cross-petition for modification, and he would have prevailed.”
¶ 15. Factual findings as to lach-es or equitable estoppel will be affirmed when “supported by credible evidence, or reasonable inferences which may be drawn from credible evidence.” Knight v. McCain, 531 So.2d 590, 597 (Miss.1988); Morgan v. Morgan, 431 So.2d 1119, 1121 (Miss.1983). See also Scott Addison Const., Inc. v. Lauderdale County School System, 789 So.2d 771, 776(¶ 16) (Miss.2001). The chancery court observed the witnesses, and assessed credibility, and found that Mrs. Nicholas asserted a rational basis for believing that she was better off settling for the base alimony, until such time as Mr. Nicholas ceased paying any support. Therefore, evidence supported a finding that Mrs. Nicholas did not make any representation that she intended to •waive any rights given to her by the settlement agreement.
¶ 16. As a matter of law, a party may not assert equitable estoppel if he has “unclean hands.” Mauck v. Columbus Hotel Co., 741 So.2d 259(¶ 18) (Miss.1999). See also Heritage Cablevision v. New Albany Elec. Power System of City of New Albany, 646 So.2d 1305, 1310 (Miss.1994)(estoppel cannot operate to further fraud). In this case, the chancery court found that Mr. Nicholas’ admittedly untrue assertion to Mrs. Nicholas that he would be forced into bankruptcy, and she would lose even the base support, established that he lacked the “clean hands” necessary to raise the issue of equitable estoppel. Ample evidence supported this as well as all other findings as to laches and equitable estoppel. There is no merit to this assignment of error.
II. ESCALATING SUPPORT
A. COST OF LIVING ESCALATION
¶ 17. Mr. Nicholas candidly admits that our supreme court has held that a cost of living escalation clause, such as that found in this case, is enforceable. Speed v. Speed, 757 So.2d 221 (¶ 12) (Miss.2000). *1214 He requests that this issue be revisited. Accordingly, we affirm the chancery court on this issue.
B. DIVISION OF FUTURE DIVIDENDS
¶ 18. The settlement agreement required Mr. Nicholas to give to Mrs. Nicholas one-half of all future stock dividends and bonuses. The chancery court applied Mississippi Code Annotated Section 15-1-43 (Rev.1995) to limit Mrs. Nicholas’ recovery to only dividends and other benefits to the seven years prior to the commencement of this action. Mrs. Nicholas does not take issue with that ruling, even though the record shows that Mr. Nicholas received $9,200 in dividends and over $75,000 in bonuses to which recovery was denied.
¶ 19. In the seven years prior to the commencement of this action, from 1993 through 2000, Mr. Nicholas earned dividends on his equity interest in Southland Management Corporation. The chancery court calculated that one-half of these dividends amounted to $111,500, and awarded that amount to Mrs. Nicholas.
¶ 20. Mr. Nicholas contends that the chancery court applied an erroneous legal standard in awarding one-half of his accrued dividends from his Southland Management Corporation Stock. This Court will apply a de novo standard of review to questions of law. Field v. Wayne T. Lamar, M.D., P.A., 822 So.2d 893, 898(¶ 19) (Miss.Ct.App.2002) (citing Par Indus., Inc. v. Target Container Co., 708 So.2d 44, 47 (Miss.1998)). Mr. Nicholas contends that the chancery court erred as a matter of law in not limiting Mrs. Nicholas’ recovery under the settlement agreement to the wife’s needs and the husband’s ability to pay. In essence, Mr. Nicholas asked the chancery court to reform the settlement agreement in regards to past due support and property division. This argument is misplaced. Settlement agreements not evidencing fraud or overreaching will be enforced. Speed v. Speed, 757 So.2d 221(¶ 8) (Miss.2000). The record shows that Mr. Nicholas was an attorney and a former economics professor, who was well versed in his own economic situation as well as complex real estate investments. The record also shows that he played some part in drafting the settlement agreement. The record does not reflect any fraud or overreaching on Mrs. Nicholas’ part. The chancery court did not err in ruling the settlement agreement enforceable. There is no merit to this assignment of error.
C. CONVERSION OF CHILD SUPPORT TO ALIMONY
¶ 21. Mr. Nicholas’ theory in this assignment of error is similar to that he made regarding dividends, in that he asked for judicial reformation of the settlement agreement. He asserts that the chancery court did not address the issue of whether the clause of the settlement agreement which converted child support to alimony when the children reached majority was enforceable. The chancery court’s order reflects that it was enforcing all of the provisions in the settlement agreement that had already vested monetary or property rights and which were not time barred. The chancery court relied upon the correct legal standard which encourages enforcement of property settlements. See e.g., Speed v. Speed, 757 So.2d at (¶ 8). There is no merit to this assignment of error.
III. PRESENT FINANCIAL CONDITION
¶ 22. Mr. Nicholas’ assertion is that he was never able to comply with the settlement agreement, and he presently is un *1215 able to comply with paying either the judgment or the reduced amount of alimony the chancery court awarded pursuant to his cross-motion to modify. Yet, his personal income statement, filed on January 31, 2001, showed annual income of $445,000, total assets of $1,156,000, liabilities of $510,000, and net worth of $655,000.
¶ 23. The chancery court stated that it disbelieved Mr. Nicholas’ assertions of inability to pay. “[T]he Court has clear proof of Mr. Nicholas’ capabilities for deception as proven by his forgery of Mrs. Nicholas’ signature on a deed for the sale of a joint residence.... ” Weight and credibility of evidence is left to the discretion of the chancery court. Alderson v. Alderson, 810 So.2d 627(¶ 4) (Miss.Ct.App.2002). Given this Court’s standard of review, this assertion of error is without merit.
IV. STATUTORY PENALTY
¶24. Because we affirm the chancery court’s decision unconditionally, we assess Mr. Nicholas with the statutory penalty of 15% pursuant to Mississippi Code Annotated Section 11-3-23 (Rev.1991). See e.g., Wilson v. Greyhound Bus Lines, Inc., 830 So.2d 1151(¶ 25) (Miss.2002).
¶ 25. THE JUDGMENT OF THE HINDS COUNTY CHANCERY COURT IS AFFIRMED. STATUTORY DAMAGES AND INTEREST ARE AWARDED. COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J, KING AND SOUTHWICK, P.JJ., BRIDGES, THOMAS, LEE, IRVING, MYERS AND GRIFFIS, JJ„ CONCUR.