# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2012-CA-01772-SCT

*ANDREA GAIENNIE*

*v.*

*MICHAEL McMILLIN*

| | |
|---|---|
| DATE OF JUDGMENT: | 09/27/2012 |
| TRIAL JUDGE: | HON. VICKI R. BARNES |
| COURT FROM WHICH APPEALED: | WARREN COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | BRENT E. SOUTHERN |
| ATTORNEYS FOR APPELLEE: | PENNY B. LAWSON |
| | J. MACK VARNER |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | REVERSED AND REMANDED - 05/15/2014 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE RANDOLPH, P.J., PIERCE AND KING, JJ.**

**RANDOLPH, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     Today we consider whether the Warren County Chancery Court's finding that Andrea Gaiennie was required under a property-settlement agreement to pay for one-half of her children's private-school tuition, and a related contempt issue were in error. We reverse and remand.

## FACTUAL/PROCEDURAL BACKGROUND

¶2.     On May 15, 2007, Andrea Gaiennie and Michael McMillin entered a divorce decree on the ground of irreconcilable differences. In conjunction with the divorce decree, the

parties entered into a property-settlement agreement. At the time of the divorce, Gaiennie

and McMillin had two children, ages seven and three. The agreement provided for joint legal

custody, with McMillin having primary physical custody of the two children. The agreement

provided in part:

> 3. Child Support and School Expenses. Wife will not be required to pay child support to Husband, as Husband acknowledges and represents unto the Court that he has sufficient income in excess of that set out in the Mississippi Child Support Guidelines to fully support the minor children in his custody without contributions of child support from the Wife. However, Husband and Wife agree that each will pay one-half of any and all daycare expenses, and any other expenses relating to daycare or school, including school supplies, and sports activities for the minor children, including the costs of any uniforms, fees, and travel expenses for sports activities.
>
> . . .
>
> 12. College Education and Expenses. Husband will continue payments to the Mississippi Impact for the minor children for their college tuition and Wife agrees to contribute and pay $500.00 per year to the Mississippi Impact fund for the minor childrens' college tuition beginning in 2007. Husband and Wife further agree that whatever college expenses are not covered by the Mississippi Impact fund, that as such college expenses that are not covered become due, Husband and Wife will discuss and confer with one another as to which are reasonable for college for the minor children, they and will [sic] decide, if possible, the amount that each will pay toward said college expenses, and if they cannot agree, then Husband and Wife agree that the Chancery Court of Warren County will make such decisions regard[ing] the college expenses for the minor children. That this agreement will extend throughout the attainment of a bachelor's degree or equivalent. This obligation may extend past the twenty-first birthday of either child, but it shall not extend past the twenty-third birthday of either child. Total expenses for which the Husband and Wife may be responsible and may agree on include the following: tuition, room and board, books, student fees, transportation expenses, fraternity or sorority dues, fees or expenses, and a reasonable amount of discretionary spending money. Husband and Wife further agree to consult with one another and with each minor child as to the choice of the

2

appropriate college or university. The college or university shall be selected by the parties and the child, the majority rule.

¶3. At the time of the divorce, the seven-year-old was enrolled in a public school, and the three-year-old attended daycare. The older child continued to attend public school. The younger child was enrolled in public school upon reaching school age. The children continued to attend public school through the 2009-2010 school year. However, after a bullying incident in 2010, the children were enrolled in a private school, paid for equally by Gaiennie and McMillin. Gaiennie testified that, in exchange for her help paying for private school, McMillin agreed to release Gaiennie from her obligation to make her yearly contribution to the college fund. Neither sought modification of the decree to reflect this alleged agreement.

¶4. Both children attended the private school through the 2010-2011 and 2011-2012 school years. Prior to the 2012-2013 school year, Gaiennie testified that she once again demanded a document acknowledging their oral agreement to relieve her of her obligation to contribute to the college fund. After McMillin rebuffed Gaiennie's request, Gaiennie refused to continue paying tuition for the 2012-2013 school year. On February 24, 2012, Gaiennie filed a Petition for Clarification, Enforcement and/or Modification, asking the chancellor to confirm that precollege private-school tuition is not required under the property-settlement agreement, or, in the alternative, if it is required, to modify the property-settlement agreement to relieve her of the obligation to pay either the private-school tuition or the annual college-fund contribution. Gaiennie also asked for McMillin to disclose the

3

specifics of the college fund so that she could make her required contribution directly into the fund. McMillin filed a Counter-Petition for Contempt and/or Modification of Judgment of Divorce, arguing that Gaiennie should be found in contempt for failing to contribute to the college fund in 2010 and 2011 and, if she is not required to pay for one-half of private-school tuition under the agreement, that it be modified to require her to pay one-half.

¶5. A hearing was held on August 24, 2012. In addition to the testimony discussed *supra*, Gaiennie testified that she has been unable to make her yearly contributions to the "Mississippi Impact" fund as outlined in the agreement, as the "Mississippi Impact" fund does not exist. Instead, McMillin's father had established a "Mississippi Education Savings Program" for the children, a separate type of college-savings fund. The parties offered conflicting evidence as to whether Gaiennie had made any contributions to the fund in 2007 and 2008. However, McMillin presented records of Gaiennie's 2009 payment. Gaiennie conceded that she made no payments in 2010 and 2011.

¶6. On September 27, 2012, the chancellor entered a Memorandum Opinion and Final Judgment. The chancellor made the following findings, *inter alia*:

> 1. Gaiennie is obligated under the property settlement agreement to pay one-half of private-school tuition.
> 2. McMillin must "immediately provide [] Gaiennie with the details and information regarding the . . . college fund."
> 3. Gaiennie is in contempt of court for failing to contribute to the college fund for the years 2007, 2008, 2010 and 2011.
> 4. Gaiennie is ordered to pay $1500.00 in attorney fees.

On October 9, 2012, the chancellor denied Gaiennie's Petition for Reconsideration and/or Modification. Aggrieved by the chancellor's decisions, Gaiennie timely filed the instant

4

appeal on October 25, 2012. We deny Appellee's Emergency Motion to Vacate Order and Lift Stay.

## ISSUES

¶7.     Gaiennie raises the following issues, restated as follows:

I.      Whether the chancellor erred in requiring Gaiennie to pay one-half of the private-school tuition.

II.     Whether it was improper to hold Gaiennie in contempt of court.

III.    Whether it was improper to assess attorney fees against Gaiennie.

## ANALYSIS

**I. Gaiennie is not obligated to pay for private-school tuition.**

¶8.     "While a chancellor's decisions in a [domestic] action are reviewed for manifest error, a property settlement agreement is a contract, and contract interpretation is a question of law, which is reviewed de novo." *McFarland v. McFarland*, 105 So. 3d 1111, 1118 (Miss. 2013) (citing *Harris v. Harris*, 988 So. 2d 376, 378 (Miss. 2008)). This Court applies a three-tiered approach to contract interpretation. *Facilities, Inc. v. Rogers-Usry Chevrolet, Inc.*, 908 So. 2d 107, 111 (Miss. 2005). First, we apply the "four corners" test, wherein this Court "looks to the language that the parties used in expressing their agreement." *Id.* "When construing a contract, we will read the contract as a whole, so as to give effect to all of its clauses." *Id.* "On the other hand, if the contract is unclear or ambiguous, the court should attempt to 'harmonize the provisions in accord with the parties' apparent intent." *Id.* (quoting *Pursue Energy Corp. v. Perkins*, 558 So. 2d 349, 352 (Miss. 1990)). "The mere fact that the parties

5

disagree about the meaning of a provision of a contract does not make the contract ambiguous as a matter of law." ***Cherry v. Anthony, Gibbs, Sage***, 501 So. 2d 416, 419 (Miss. 1987). Secondly, if the contract is unclear or ambiguous, this Court applies the "discretionary 'canons' of contract construction." ***Facilities***, 908 So. 2d at 111. Thirdly, "if the contract continues to evade clarity as to the parties' intent, the court should consider extrinsic or parol evidence." ***Id.***

¶9. Gaiennie argues that, under the terms of the property-settlement agreement, she is not obligated to pay one-half of private-school expenses. Gaiennie points to the absence of the word "tuition" in the "school expenses" provision as a clear and unambiguous indication that precollege private-school tuition was not part of the property-settlement agreement. Gaiennie also argues that there was no consideration of private school at the time the property-settlement agreement was signed. McMillin argues that the plain meaning of the phrase "any other expense related to daycare or school" necessarily encompasses private-school tuition, as private-school tuition is a school-related expense.

¶10. We disagree. The absence of any reference to private school or private-school tuition in provision three controls the issue. "When a contract is clear and unambiguous, this Court 'is not concerned with what the parties may have meant or intended but rather what they said, for the language employed in a contract is the surest guide to what was intended.'" ***Ivison v. Ivison***, 762 So. 2d 329, 335 (Miss. 2000) (citing ***Shaw v. Burchfield***, 481 So. 2d 247, 252 (Miss. 1985)). Looking to the four corners of the agreement, we find that it is not ambiguous. Tuition is conspicuously absent from the "school expenses" provision. (*See*

6

*Zweber v. Zweber*, 102 So. 3d 1098, 1101-02 (Miss. 2012) (holding that "flying lessons were not included in the final judgment of divorce).

¶11.    Notwithstanding that the plain language of the agreement requires no private-school tuition, if we accepted Gaiennie's argument that absence of the word "tuition" creates an ambiguity, the result would be no different, for we would first attempt to harmonize the provisions in accord with the parties' apparent intent.  The fact that tuition was specifically included within "college expenses," but not "school expenses" reveals the parties' intent that private-school tuition was not intended under the agreement.

¶12.    Even if we went beyond the "four-corners test," and looked to the intent of the parties, Gaiennie would still prevail.  Neither party disputes that, at the time the agreement was signed, the eldest child was enrolled in public school.  Neither party disputes that, at the time the agreement was signed, it was their intent for the children to attend public school.  The children attended public school for nearly three years before a bullying incident prompted consideration of private school.  We find that, because private-school tuition was not specified in the agreement, we must reverse the chancellor's holding requiring Gaiennie to pay for one-half of the children's private-school tuition.

### II. The chancellor erred in finding Gaiennie to be in contempt of court.

¶13.    "The purpose of civil contempt is to enforce or coerce obedience to the orders of the court." *Lahmann v. Hallmon*, 722 So. 2d 614, 620 (Miss. 1998) (citations omitted).  "A contempt citation is proper only when the contemner has wilfully and deliberately ignored the order of the court." *Mizell v. Mizell*, 708 So. 2d 55, 64 (Miss. 1998) (citing *Cooper v.*

7

*Keyes*, 510 So. 2d 518, 519 (Miss. 1987)). "In a contempt action involving unpaid child support, when the party entitled to receive support introduces evidence that the party required to pay the support has failed so to do, a prima facie case of contempt has been made." *Id.* (citation omitted). The burden then "shifts to the paying party to show an inability to pay or other defense, and this proof must be clear and convincing and rise above a state of doubtfulness." *Id.* (citations omitted). "Whether a party is in contempt is left to the Chancellor's substantial discretion." *Id.* (citation omitted).

¶14. Under the terms of the property-settlement agreement, Gaiennie was required to contribute $500 annually to the "Mississippi Impact Fund." Trial testimony established that no fund existed. Instead, McMillin's father had established a "Mississippi Education Savings Program." Neither party sought to modify the agreement to reflect the correct fund. It was impossible for her to comply with the agreement as written. Thus, it was an abuse of discretion to hold her in contempt.

### III. The chancellor did not err in awarding attorney fees.

¶15. "An award of attorney's fees in domestic cases is largely a matter entrusted to the sound discretion of the trial court." *Zeman v. Stanford*, 789 So. 2d 798, 806 (Miss. 2001) (citations omitted). "Unless the chancellor is manifestly wrong, his decision regarding attorney fees will not be disturbed on appeal." *Id.* (citations omitted). Finding Gaiennie to be in contempt, the chancellor ordered Gaiennie to pay for a portion of McMillin's attorney fees. Because the chancellor ordered Gaiennie to pay attorney fees based on erroneously

8

finding her in contempt, we reverse the award of attorney fees. However, the chancellor did not err in refusing to award Gaiennie attorney fees.

## CONCLUSION

¶16.    The chancellor erred in requiring Gaiennie to pay for one-half of her children's private-school tuition. The chancellor also erred in finding Gaiennie to be in contempt, and awarding attorney fees as a result, for failing to contribute to the Mississippi Impact Fund. Thus, we reverse the trial court's judgment and remand the case to the Warren County Chancery Court for further proceedings consistent with this opinion.

¶17.    **REVERSED AND REMANDED.**

**WALLER, C.J., DICKINSON, P.J., LAMAR, KITCHENS, CHANDLER, PIERCE AND KING, JJ., CONCUR. COLEMAN, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION**.

**COLEMAN, JUSTICE, CONCURRING IN PART AND DISSENTING IN PART:**

¶18.    I agree with the majority's opinion that the chancellor erred in finding that Gaiennie was in contempt of court. However, I also agree that the terms of the property-settlement agreement were unambiguous. However, I disagree that tuition is not a school expense. Therefore, I respectfully concur in part and dissent in part.

¶19.    The Court has stated that if a contract is unambiguous, "'the intention of the contracting parties should be gleaned solely from the wording of the contract' and parol evidence should not be considered." *Epperson v. SOUTHBank*, 93 So. 3d 10, 16 (¶ 17) (Miss. 2012) (quoting *Turner v. Terry*, 799 So. 2d 25, 32 (¶ 16) (Miss. 2001)). The Court

9

must "accept the plain meaning of a contract as the intent of the parties where no ambiguity exists." *A & F Props., LLC v. Madison County Bd. of Supervisors*, 933 So. 2d 296, 301 (¶ 12) (Miss. 2006) (quoting *Ferrara v. Walters*, 919 So. 2d 876, 882 (¶ 13) (Miss. 2005)).

¶20.    In the case *sub judice*, the majority takes the position that tuition is not a school expense. *Merriam-Webster* defines "expense" as a "financial burden or outlay," equating the term with "cost." *Merriam-Webster Collegiate Dictionary* 408 (10th ed. 1993). *Merriam-Webster* goes on to define "tuition" as "the price of or payment for instruction." *Id.* at 1271. Substituting in the definition of expense, the provision would read "any other [financial burden] related to daycare or school." It is my opinion that such a provision would unambiguously include "the price of or payment for instruction," which, I would imagine, parents across the country wholeheartedly would agree amounts to a "financial burden." Accordingly, I would affirm the chancellor's holding requiring Gaiennie to pay one-half of the children's private-school tuition.