# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2014-CA-01136-COA

**KAREN G. CHANCE (RICHARDS)**                                      **APPELLANT**

**v.**

**RICKEY L. CHANCE**                                                        **APPELLEE**

DATE OF JUDGMENT:              07/24/2014
TRIAL JUDGE:                          HON. G. CHARLES BORDIS IV
COURT FROM WHICH APPEALED:   JACKSON COUNTY CHANCERY COURT
ATTORNEYS FOR APPELLANT:      BRANDI DENTON GATEWOOD
                                      ASHLEY HUTCHINGS HENDREN
ATTORNEY FOR APPELLEE:         CHARLIENE ROEMER
NATURE OF THE CASE:            CIVIL - DOMESTIC RELATIONS
TRIAL COURT DISPOSITION:       FOUND APPELLANT IN CONTEMPT AND
                                      AWARDED APPELLEE ATTORNEY'S
                                      FEES
DISPOSITION:                    AFFIRMED - 05/10/2016
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE GRIFFIS, P.J., CARLTON AND JAMES, JJ.**

**CARLTON, J., FOR THE COURT:**

¶1.    Karen Chance (Richards)[1] appeals the Jackson County Chancery Court's judgment

holding her in contempt and awarding attorney's fees to Dr. Rickey Chance.  On appeal,

Karen argues that the chancellor's findings were manifestly wrong because the affirmative

defenses of laches, waiver, and equitable estoppel barred Rickey's claims.

## FACTS

¶2.    On March 14, 2003, the chancery court entered a judgment granting Rickey and Karen

---

[1] After her divorce, Karen remarried and changed her last name to Richards.

an irreconcilable-differences divorce. As part of the property-settlement agreement (PSA) incorporated into their divorce judgment, the parties agreed that Rickey would retain possession of two homes the couple owned while Karen would retain possession of a third property located at 1408 Calhoun Street in Ocean Springs, Mississippi.

¶3. The PSA required Rickey to obtain a thirty-year mortgage for Karen's home. The PSA further required that Rickey assume the responsibility for paying half of the ad valorem taxes on the home and the entire monthly mortgage payments for ninety-six months until the mortgage's principal balance reached $90,000. The PSA required Karen to pay the other half of the ad valorem taxes and to assume full responsibility for paying the homeowner's insurance premiums. Once the mortgage's principal balance reached $90,000, Karen would assume sole responsibility for satisfying all the home's mortgage payments, taxes, and insurance payments.

¶4. On February 17, 2004, the attorney for the home closing sent each of the parties a letter. In the letter, the attorney suggested a course of action that she believed provided the easiest way for the parties to fulfill the terms of their PSA. Because the home loan required monthly escrow payments for taxes and insurance, the attorney suggested that Rickey reduce his monthly alimony payments by the amount of taxes and insurance escrow that Karen was responsible for paying each month. In doing so, the parties would erase the need for Karen to send Rickey a monthly check for the escrow.

¶5. Despite the closing attorney's recommendation, the parties failed to adopt her suggested course of action. Instead, Karen, who asserted that she lacked the ability to satisfy

2

her financial obligations under the PSA, failed to pay either the insurance premiums on the home or her half of the ad valorem taxes. As a result, Rickey paid all the ad valorem taxes and insurance premiums on the home from 2003 until 2013.

¶6. Both parties agreed that, on several occasions between 2003 and 2013, they verbally discussed Karen's continuing obligation to pay for the home's insurance premiums and her half of the home's taxes. However, during each conversation, Karen maintained that she lacked the ability to meet her financial obligations under the PSA. On September 5, 2013, Rickey sent Karen a letter asking that she reimburse him for past-due insurance and tax payments. In the alternative, Rickey stated that Karen could refinance the home's mortgage loan in her name, credit the amount owed to him against the remainder of the principal balance, and then allow him to pay off the difference between that figure and $90,000. As stated in his letter, Rickey calculated that Karen owed him $56,660.51, which included $4,462.35 for money Rickey paid into the escrow account for 2013. Following Rickey's letter, Karen sent Rickey a check for $4,462.35 to cover her share of the 2013 taxes and insurance.

¶7. On October 23, 2013, Rickey filed a motion for contempt against Karen for her failure to pay the insurance premiums and her half of the ad valorem taxes. Karen filed an answer and asserted that Rickey's cause of action was barred by several affirmative defenses, including the seven-year statute of limitations[2] and the doctrines of unclean hands, waiver, laches, and estoppel.

---

[2] *See* Miss. Code Ann. § 15-1-43 (Rev. 2012).

¶8. Following a hearing on the matter, the chancellor entered a judgment on July 24, 2014. The chancellor noted that the parties both acknowledged having multiple verbal communications about the home located at 1408 Calhoun Street. During these verbal communications, the parties discussed the payment of the home's mortgage, taxes, and insurance. The chancellor found that Karen asserted she was unable to satisfy her financial obligations as to the home, and she claimed that Rickey indicated he would pay the taxes and insurance as a gift to her. The chancellor found that Rickey argued, however, that he never intended to waive or forgive any of Karen's financial obligations with regard to the home's taxes and insurance. The chancellor further acknowledged that the parties had no written communication regarding the home until Rickey's letter dated September 5, 2013. The chancellor also found that, since the entry of the divorce judgment, Rickey had paid a total of $35,491 in insurance premiums on the home and a total of $15,678.14 in ad valorem taxes on the home. In addition, the chancellor stated that, other than the $4,462.35 Karen mailed Rickey in May 2014, Karen failed to contribute any funds toward the payment of the home's insurance or her half of the home's taxes.

¶9. After concluding that Karen failed to comply with the terms of the divorce judgment, the chancellor next discussed the affirmative defenses Karen asserted. The chancellor first addressed Karen's assertion that Rickey's claim was barred by the doctrine of unclean hands. According to Karen, Rickey also failed to comply with certain parts of the divorce judgment. Despite Karen's claims, the chancellor found that Karen failed to meet her burden of proof because the evidence she offered was general in nature and uncorroborated.

¶10. The chancellor next addressed Karen's claim that section 15-1-43's seven-year statute of limitations barred Rickey's requested relief. Because Rickey filed his contempt motion on October 23, 2013, the chancellor found the statute of limitations barred him from seeking recovery for any payments made prior to October 23, 2006.[3] Thus, the chancellor found that any insurance premiums and taxes Rickey paid in 2004 and 2005 were not recoverable. However, the chancellor concluded that the statute of limitations posed no bar to Rickey's attempt to recover the $6,463.90 in taxes and $32,121 in insurance that he paid on Karen's behalf after October 23, 2006.

¶11. The chancellor next addressed the doctrines of laches, waiver, and estoppel and concluded that none of these defenses barred Rickey's requested relief. The chancellor acknowledged that a party asserting laches must show: (1) a delay in asserting a right or claim; (2) the delay was inexcusable; and (3) the party against whom the claim is asserted suffered undue prejudice. Although the chancellor found that Rickey delayed in asserting his rights, the chancellor also concluded that the delay was excusable. The chancellor found that both parties had testified to verbally communicating about the taxes and insurance owed on the home between 2004 and 2014.

¶12. With regard to the parties' verbal communications, the chancellor found:

> Both [parties] testified that the content of their discussions always centered around Karen informing Rickey that she was unable to financially afford to

---

[3] *See Moseley v. Smith*, 180 So. 3d 667, 674 (¶33) (Miss. Ct. App. 2014) ("[T]he statute of limitations on a right to compel a monetary judgment in a domestic action begins to run on the date on which the payment is due and payable. For example, the seven-year statute of limitations to recover alimony payments runs from the month each payment vested, not the date of divorce." (emphasis, internal citations, and quotation marks omitted)).

> pay her share of the taxes and insurance premiums. Rickey accepted Karen's statements regarding her financial situation and paid 100% of the taxes and insurance premiums, but he reminded Karen that it was her obligation to pay one-half of the taxes and all of the insurance premiums. During this same time, Karen was able to enjoy trips to Hawaii, purchase a new vehicle, etc. Based upon the proof, Rickey was paying the taxes and insurance in an effort to help Karen due to Karen's alleged "financial difficulties[."]

As a result of these findings, the chancellor concluded that the doctrine of laches failed to apply since Rickey's delay in bringing the present action was excusable.

¶13. In next addressing the doctrine of equitable estoppel, the chancellor recognized that Karen must prove: (1) belief and reliance on some representation made by Rickey; (2) change of position as a result of the representation; and (3) detriment or prejudice caused by the change of position. The chancellor found that Rickey made no representations upon which Karen detrimentally relied. Although Karen relied on Rickey's statements following each of their conversations that he would pay the taxes and insurance, the chancellor found that Rickey's actions constituted a "nice gesture" and that Karen failed to show she suffered any detriment or prejudice. The chancellor instead found that Karen had benefitted from Rickey's actions since she now owned her home and all the equity that had accumulated due, in large part, to the mortgage payments Rickey had made. In addition, the chancellor found that Rickey's payment of the home's taxes prevented Karen from losing the home at a tax sale. Thus, the chancellor concluded that equitable estoppel failed to apply.

¶14. The chancellor next discussed Rickey's requests that Karen be held in contempt and that he be awarded attorney's fees. The chancellor stated that Karen failed to offer any proof to show her inability to satisfy the obligations imposed in the divorce judgment. Therefore,

6

the chancellor found Karen in contempt of court. However, after also finding that the parties' verbal communications about Karen's failure to satisfy her obligations were open to more than one interpretation, the chancellor concluded that Karen's contempt was not willful.

¶15. The chancellor next awarded Rickey attorney's fees since Karen's failure to comply with the divorce judgment forced Rickey to file pleadings to enforce the order. The chancellor found that Rickey had incurred $1,720 in attorney's fees to prosecute the case. The chancellor also noted that Rickey's attorney had introduced into evidence an itemized statement of legal services rendered to Rickey, and after reviewing the statement, the chancellor concluded the services and fees were reasonable under the *McKee*[4] factors.

¶16. As a result of his findings, the chancellor awarded Rickey a judgment in the amount of $38,584.90,[5] which represented the taxes and insurance premiums he paid that were not barred by the statute of limitations. The chancellor concluded "that the most equitable remedy for satisfaction of the judgment [was] to credit Rickey in his obligation to pay the monthly mortgage payment." As provided in the divorce judgment, Karen was to assume sole responsibility for the home's mortgage, taxes, and insurance when the principal balance of the mortgage reached $90,000. However, in light of his judgment awarding Rickey $38,584.90, the chancellor added this amount to $90,000 and ordered Karen to assume responsibility for the home's financial obligations when the mortgage reached the new total of $128,584.90.

---

[4] *See McKee v. McKee*, 418 So. 2d 764, 767 (Miss. 1982).

[5] Due to a scrivener's error, the chancellor's judgment misstated this total as $34,122.55.

¶17.   Aggrieved by the chancellor's judgment, Karen appeals to this Court.

**STANDARD OF REVIEW**

¶18.   "This Court's standard of review in domestic[-]relations matters is extremely limited."
*Phillips v. Phillips*, 45 So. 3d 684, 692 (¶23) (Miss. Ct. App. 2010).  We will not disturb a
chancellor's findings of fact unless the findings were manifestly wrong or clearly erroneous
or unless the chancellor applied an erroneous legal standard.  *Id.*  Where the record contains
substantial evidence to support the chancellor's findings, we will not reverse his decision.
*Id.*  However, we review questions of law de novo.  *Smith v. Wilson*, 90 So. 3d 51, 56 (¶13)
(Miss. 2012).

**DISCUSSION**

¶19.   As previously discussed, the chancellor found that the seven-year statute of limitations
applied to the present case and prevented Rickey from seeking reimbursement of any taxes
and insurance premiums he paid prior to October 23, 2006.  On appeal, neither party disputes
the applicability of section 15-1-43's statute of limitations.  Instead, Karen argues that the
chancellor was manifestly wrong in holding her in contempt for failing to comply with the
terms of the divorce judgment and for awarding Rickey attorney's fees.  According to
Karen's argument, the doctrines of laches, waiver, and equitable estoppel barred Rickey's
contempt claim.

**A.     Laches and Waiver**

¶20.   Although Karen argues on appeal that Rickey's delay in asserting his rights was
inexcusable, the Mississippi Supreme Court has previously held that "[a] delay short of the

statutory period of limitations does not bar recovery. The doctrine of laches is simply inapplicable where a claim has not yet been barred by the applicable statute of limitations." *Greenlee v. Mitchell*, 607 So. 2d 97, 111 (Miss. 1992) (internal citations omitted). Because the claims are not yet barred by the applicable statute of limitations, our precedent clearly holds that the doctrine of laches fails to apply. *See id. See also Nicholas v. Nicholas*, 841 So. 2d 1208, 1212 (¶12) (Miss. Ct. App. 2003). We likewise find that the doctrine of waiver fails to apply to bar Rickey's claims. As a result, we find no merit to Karen's arguments that the doctrines of laches and waiver preclude Rickey's claims against her.

### B. Equitable Estoppel

¶21. Karen also asserts that Rickey's claims are barred by the doctrine of equitable estoppel, which "requires proof of a (1) belief and reliance on some representation; (2) change of position as a result of the representation; and (3) detriment or prejudice caused by the change of position." *Nicholas*, 841 So. 2d at 1213 (¶13) (citation omitted). "The burden of establishing the elements of an estoppel is on the party asserting the estoppel. The existence of the elements of an estoppel must be established by the preponderance of the evidence." *Robertson v. Moody*, 918 So. 2d 787, 790 (¶14) (Miss. Ct. App. 2005) (citation omitted).

¶22. According to Karen, Rickey led her to believe during their conversations that his act of paying the insurance premiums and her share of the taxes constituted a gift for which he expected no repayment. Karen argues that, in reliance on Rickey's statements, she failed to set aside money either to satisfy those obligations as they became due or to repay Rickey on

9

some future date. Karen further asserts that she suffered prejudice from Rickey's statements since the chancellor's judgment orders her to assume responsibility for the home's financial obligations when the mortgage reaches $128,584.90 rather than at $90,000. Karen contends that the chancellor's judgment forces her to secure her own mortgage at a higher amount than she originally anticipated.

¶23. After considering the parties' testimony and evidence, the chancellor found no merit to Karen's argument that equitable estoppel barred Rickey's requested relief. Although the chancellor found that Karen relied on Rickey's statements that he would pay the insurance premiums and her half of the taxes, the chancellor found that Rickey's actions amounted to a "nice gesture" and that Karen failed to show any actual prejudice or detriment resulting from her reliance on Rickey's statements. In fact, far from suffering prejudice or detriment, the chancellor found that Karen actually benefitted from Rickey's actions because she now owned the home and all the equity that had accumulated. Furthermore, the chancellor found that Rickey's payment of the home's taxes prevented Karen from losing the home at a tax sale. As a result of these findings, the chancellor concluded that equitable estoppel did not bar Rickey's claims.

¶24. As our caselaw establishes, the chancellor's " [f]actual findings as to . . . equitable estoppel will be affirmed when supported by credible evidence . . . or reasonable inferences which may be drawn from credible evidence." *Nicholas,* 841 So. 2d at 1213 (¶15) (citations and internal quotation marks omitted). Furthermore, "a chancellor, being the only one to hear the testimony of witnesses and observe their demeanor, is in the best position to judge

their credibility." *In re Estate of Carter*, 912 So. 2d 138, 143 (¶18) (Miss. 2005). "Moreover, since the chancellor is best able to determine the credibility of the witnesses' testimony, it is not [the appellate court's] province to undermine the chancellor's authority by replacing the chancellor's judgment with our own." *Id.* Because substantial credible evidence supported the chancellor's findings, we find no merit to Karen's argument that equitable estoppel barred Rickey's claims against her.

### C. Contempt

¶25. Karen also contends that, because Mississippi precedent states that contempt can only be willful, the chancellor clearly erred by holding her in "unwillful" contempt.

¶26. "Contempt matters are committed to the substantial discretion of the trial court. The chancellor's findings will not be disturbed unless manifestly wrong." *Gutierrez v. Gutierrez*, 153 So. 3d 703, 713 (¶31) (Miss. 2014) (internal citations and quotation marks omitted). "Contempt can only be willful. A contempt citation is proper only when the contemner has wil[l]fully and deliberately ignored the order of the court." *Mizell v. Mizell*, 708 So. 2d 55, 64 (¶52) (Miss. 1998) (citation and internal quotation marks omitted). However, our precedent also acknowledges:

> As a defense to a civil-contempt claim, a party can argue that the violation of the court's order was not willful or deliberate so as to be labeled "contumacious." Another defense is the party's honest inability to perform according to the dictates of the order or decree; however, the defendant bears the duty to prove his inability with particularity and not in general terms.

*In re Guardianship of McClinton*, 157 So. 3d 862, 873 (¶33) (Miss. Ct. App. 2015) (internal

citations omitted).[6]

¶27.     Although the chancellor found Karen in contempt, he also found Karen's contempt was not willful since the parties' verbal communications about Karen's failure to satisfy her obligations were open to more than one interpretation.  In reviewing this issue, we find it was within the chancellor's discretion to find that, although Karen failed to comply with the prior court order, her noncompliance was neither willful nor deliberate.  *See Brawdy v. Howell*, 841 So. 2d 1175, 1181 (¶23) (Miss. Ct. App. 2003) (holding it was within the chancellor's discretion to find that, though the husband was in contempt, the contempt was not willful).  Because we cannot say that the chancellor's findings were manifestly wrong, we refuse to disturb his findings of fact.  Therefore, this argument lacks merit.

### D.     Attorney's Fees

¶28.     As previously discussed, Karen maintains that the chancellor committed manifest error by not only holding her in contempt but by also awarding Rickey attorney's fees as a result of the contempt finding.  "An award of attorney's fees in domestic cases is largely a matter entrusted to the sound discretion of the trial court. Unless the chancellor is manifestly wrong, his decision regarding attorney['s] fees will not be disturbed on appeal." *Gaiennie v. McMillin*, 138 So. 3d 131, 137 (¶15) (Miss. 2014) (internal citation and quotation marks omitted).

¶29.     In *Douglas v. Douglas*, 766 So. 2d 68, 72 (¶14) (Miss. Ct. App. 2000), this Court stated:

---

[6] *See also* Miss. Code Ann. § 11-51-12(4) (Rev. 2012) ("The burden of proof in civil contempt shall be proof by a preponderance of the evidence.").

> [W]here a divorced party is bound to comply with a previously issued valid court decree, the dignity and strength of the Court through the enforcement of its decrees require nothing less than full and complete compliance. Thus, where a party who is entitled to the benefits of a previous judicial decree is forced to initiate further proceedings to gain compliance with the previous order of the court by the contumacious party, a failure to award attorney's fees serves to diminish the force of the decree if the entitled party is not in a position to obtain counsel. Furthermore, where the party responsible for compliance with the previous decree forces new litigation to be filed in order to gain the party's compliance, an award of attorney's fees is appropriate.

(Internal citations and quotation marks omitted). *See also Holloway v. Holloway*, 865 So. 2d 382, 383 (¶3) (Miss. Ct. App. 2003) (finding no abuse of discretion where the chancellor did not specifically hold the husband in contempt but still awarded the wife some of her attorney's fees incurred in the prosecution of her contempt motion); *Russell v. Russell*, 724 So. 2d 1061, 1066 (¶24) (Miss. Ct. App. 1998) (recognizing that, "[u]nder a limited exception, attorney's fees may be recovered by a party who gains enforcement of a previous support order even when no contempt is ordered").

¶30. As the record reflects, although the chancellor found Karen's contempt was not willful, the chancellor also found that Karen's failure to comply with the requirements of the divorce judgment forced Rickey to file pleadings to enforce the order. Therefore, the chancellor's award of attorney's fees fell within the limited exception where attorney's fees may be awarded to a party who gains enforcement of a previous support order or divorce judgment even though the court made no finding of contempt. *See Mizell*, 708 So. 2d at 64-65 (¶¶54-58); *Russell*, 724 So. 2d at 1066 (¶24); *Johnson v. Pogue*, 716 So. 2d 1123, 1135 (¶44) (Miss. Ct. App. 1998).

¶31. The supreme court has established that the matter of attorney's fees is largely

13

entrusted to the sound discretion of the chancellor. *See Gaiennie*, 138 So. 3d at 137 (¶15); *Mizell*, 708 So. 2d at 65 (¶56). The record reflects substantial evidence to support the chancellor's determination that Karen's actions and failure to comply with the divorce judgment necessitated Rickey's institution of legal proceedings to obtain resolution and relief. Upon finding that Karen failed to comply with the divorce judgment, the chancellor concluded that an award of attorney's fees was proper. After finding that the itemized statement of fees submitted by Rickey's attorney was reasonable under the *McKee* factors, the chancellor awarded Rickey $1,720 in attorney's fees.

¶32. The record reflects substantial credible evidence to support the chancellor's findings that Karen's failure to comply with the divorce judgment necessitated the legal proceedings and that the amount of the award was reasonable. We therefore find no abuse of discretion based on the award of attorney's fees to Rickey.[7] As a result, we conclude that Karen's argument lacks merit.

¶33. **THE JUDGMENT OF THE JACKSON COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, FAIR, WILSON AND GREENLEE, JJ., CONCUR. JAMES, J., CONCURS IN PART WITHOUT SEPARATE WRITTEN OPINION.**

---

[7] *See Gaiennie*, 138 So. 3d at 137 (¶15); *Mizell*, 708 So. 2d at 65 (¶56).